683 So.2d 1236 (1996)
STATE of Louisiana,
v.
Bill Bulkley CHAPMAN, Defendant Appellant.
No. CR 96-152.
Court of Appeal of Louisiana, Third Circuit.
October 9, 1996.
Rehearing Denied January 27, 1997.
*1238 Michael Harson, Keith A. Stutes, Asst. District Attys., for State.
Jack Cornelius Leary, Baton Rouge, Richard V. Burnes, Dmitrc I. Burnes, Alexandria, for Bill Bulkley Chapman.
Before DOUCET, C.J., and YELVERTON, and PETERS, JJ.
*1239 YELVERTON, Judge.
Defendant, Bill Bulkley Chapman, age 43, was convicted of three counts of sexual battery (La.R.S.14:43.1) and one count of aggravated oral sexual battery (La.R.S.14:43.4) on a nine-year-old girl. He was sentenced to fifteen years on the aggravated oral sexual battery charge and to eight years on each of the others, all four sentences to run concurrently.
Defendant now appeals his conviction, assigning 31 errors. Of the errors assigned, ten were not argued and are considered abandoned. Uniform Rules, Courts of Appeal, Rule 2-12.4. There is one error patent. After disposing of the error patent and briefly outlining the facts of the case, we will take up the argued assignments of error, grouping them together for discussion when their subject matter permits.

ERROR PATENT:
La.Code Crim.P. art. 880 provides that when imposing sentence the court shall give defendant credit toward service of his sentences for time spent in actual custody prior to the imposition of sentences. The record does not show that the trial court did that in this case. We amend the sentence to reflect that defendant is given credit for time served prior to the execution of the sentence. See La.Code Crim.P. art. 882(A). Resentencing is not required; however, we remand and order the district court to amend the commitment and minute entry of the sentence to reflect that defendant is given credit for time served. State v. Moore, 93-1632 (La.App. 3 Cir. 5/4/94); 640 So.2d 561, writ denied, 94-1455 (La.3/30/95); 651 So.2d 858.

FACTS:
Chapman occasionally baby-sat the victim, a nine-year-old female. On one occasion he was baby-sitting the victim and another child, a small boy. Chapman's wife was gone, having taken another child to get a "perm." He told the victim and the boy to play hide-and-seek. While the other child was hiding, Chapman asked the little girl to sit on his lap. When she did so, he unzipped her pants and began rubbing her vagina. The victim told Chapman to stop and jumped off of his lap. Defendant told the victim not to tell anyone, or her parents would go to jail.
Another time Chapman baby-sat the victim and other children while the grown-ups in the family went to an aunt's birthday party. After the other children went to sleep, the victim stayed up to watch a movie. Defendant had the little girl sit in his lap while he rubbed her vagina and inserted his finger. The child jumped off and ran to the bathroom; he followed her, seized her, and began licking her vagina. When the victim entered the living room, Chapman was sitting in a chair, his penis exposed and erect. He first asked the victim to put her mouth on his erection, but when she refused, he told her to squeeze it. She complied, and he ejaculated.
Chapman also made the girl watch a pornographic video with him while they sat on his bed. The child later related details of two scenes from the video. After they watched some of the video, defendant lay back on the bed, exposed his penis, and told the girl to "come see." The child then ran outside, just as her father was arriving to pick her up from baby-sitting. Defendant's wife was outside working in her garden.

ASSIGNMENTS OF ERROR NOS. 1-4:
These assignments all relate to rulings during a preliminary examination. A preliminary examination merely determines probable cause; by the time of appeal, a defendant has already been found guilty beyond a reasonable doubt. See State v. Burns, 602 So.2d 191 (La.App. 3 Cir.1992). Once a defendant has been tried and convicted, errors that occur at a preliminary examination are moot, unless defendant has somehow been prejudiced. Id. As neither defendant's brief nor his reply brief show how he was prejudiced by rulings at the preliminary examination, we need not discuss the first four assignments.

ASSIGNMENT OF ERROR NO. 5:
State's witness George Murphy testified that Chapman showed him a series of photographs of a naked teenage girl in various physical positions, and later, more pictures of the same girl when she was about six months pregnant. The defendant asserts *1240 that this was improper "other crimes" evidence. However, defense counsel did not object on the basis that the testimony was "other crimes" evidence. The objection at trial was on the basis of relevance, and it was overruled. Objections at trial must be not only contemporaneous, but must also include their legal basis so the district court will have an opportunity to address and correct the error. La.Code Crim.P. art. 841.
We have nevertheless considered this assignment, the chief complaint of which is that it involved events that happened in 1986 and were therefore chronologically remote to the current offense. Remoteness is not a problem. In the sex crimes case, State v. Driggers, 554 So.2d 720 (La.App. 2 Cir.1989), the second circuit allowed the use of testimony regarding incidents that occurred from 8 to 26 years prior to the charged offense.
As will be discussed more fully under other assignments, part of the current offense involves the viewing of a pornographic videotape. As described by the witness, the group of photographs of the naked teenage girl was a form of pornography. The overall evidence indicates Chapman's taste for pornographic material was related to the current offense. The evidence demonstrates his unnatural interest in young females. It also demonstrates that the current facts did not result from mistake or accident but were fully intended. Driggers, 554 So.2d 720.
The lower court did not abuse its discretion in admitting the testimony.

ASSIGNMENT OF ERROR NO. 8:
Chapman asked the trial court for a psychiatric examination of the nine-year-old victim. After a hearing, the trial court denied the request. Defendant assigns error, claiming the denial offended his rights to confrontation and cross-examination. At the trial he fully cross-examined the victim. His right to confrontation was properly protected. See State v. Huck, 94-2005 (La.App. 4 Cir. 10/25/94); 644 So.2d 1099.
We find no error. Chapman cites La. R.S. 15:241, enacted in 1995 after the hearing, arguing it is the statutory embodiment of his right to have the victim examined by a psychiatrist. This statute actually does the opposite. It states the general rule that a defendant in the specified cases involving a victim under the age of 18 shall not be entitled to compel the victim to submit to a medical, psychological, or psychiatric examination. The statute provides for an exception in limited circumstances to be determined after a hearing. The trial judge conducted a hearing and found no circumstances justifying such an examination.

ASSIGNMENT OF ERROR NO. 11:
This assignment broadly asserts error in limiting voir dire of prospective jurors, but the only limitation mentioned was a sustained objection to one question asked one juror. During a wide-ranging voir dire, the term "circumstantial evidence" was introduced to the audience for the first time; Chapman's trial counsel asked if anybody had an idea what it meant. The first two prospective jurors who were invited to respond plainly did not exactly know. When the third juror, Gary Washington, was asked what were his thoughts on circumstantial evidence, the State made an objection, and the judge sustained it.
This was not an improper limitation of voir dire. Circumstantial evidence is a term that every layman understands until he is asked to define it. The venire had not been previously instructed about it. An invitation to the prospective jurors to ramble and speculate on the subject would have served no purpose. Counsel offered no argument when the State objected and made no attempt to rephrase the question. The jury was fully instructed as to circumstantial evidence at trial. This assignment has no merit.

ASSIGNMENTS OF ERROR NOS. 13-16:
These assignments likewise relate to the selection of the jury. All deal with Chapman's challenges for cause. Defendant argues that he challenged four venire members for cause, the district court denied the challenges, and he had to use peremptory challenges. He used all of his peremptory challenges.
When a defendant uses all of his peremptories and a causal challenge is erroneously denied, prejudice is presumed. State v. *1241 Robertson, 92-2660 (La.1/14/94); 630 So.2d 1278.
The assignments relate to prospective jurors whose last names were Washington, Arnold, Gondren, and Gremillion. The record shows that Gondren was tendered as an alternate for this six-person jury. Each side was allowed one peremptory challenge for the alternate. Defense counsel challenged Gondren peremptorily without ever challenging him for cause. Thus, there was no denial of a challenge for cause. Since the original jury decided the case, the alternate was never used.
Washington, responding to the judge's questions, said he understood the law to be that the man was innocent until proven guilty and that the purpose of the trial was to determine whether he was guilty of the charges. No further questions were asked him, and there was no basis for a challenge for cause.
Gremillion, whose son was once a police officer, admitted that he would have a hard time saying that a police officer would be sitting [in the witness chair] lying. He also said he knew some who might. He was never asked if he regarded police officer witnesses in some special light. It is not evidence of unfairness or partiality for a juror to admit a tendency to believe a witness under oath. The trial judge did not err in denying that challenge for cause.
Prior to the voir dire, the trial judge had not yet himself instructed the prospective jurors as to the constitutional presumption of innocence, the right against self-incrimination, and the State's burden of proof. In the questioning by counsel on voir dire, these essentials were only vaguely and inadequately explained. Compound questions were asked which were apparently designed to elicit whether a juror would want a defendant to prove his innocence. Each juror candidate was asked to respond to this and many other compound questions. There were varying responses. One jury prospect answered: "I think if the prosecution couldn't convince me that he was guilty, that the defense would probably have a pretty good case in not putting up any defense." Arnold and Gremillion both said something to the effect that they would like to hear both sides. Instead of interrupting the detailed questioning, the trial judge waited until counsel had finished. Then the judge took over and gave a clear explanation of the State's burden of proof, the defendant's right to remain silent, and the way the jury should handle the defendant's choice not to testify or put on evidence. After this detailed and correct explanation, he asked the panel if they would have any trouble with those instructions. By their response he was assured that they would not. Each counsel, in turn, referring to the judge's comments, asked again and received assurances from the panel that they would follow the law as instructed. Viewed in the context of the entire voir dire, we find no abuse of discretion in the court's denial of the challenges for cause.

ASSIGNMENTS OF ERROR NOS. 19-20:
In these assignments, Chapman urges that the district court erred in permitting State witness Tammy Robin to testify, over a hearsay objection, regarding a conversation Ms. Robin had with defendant's wife.
On direct examination by the State, Ms. Robin testified about her conversation with Mrs. Chapman, which in turn concerned another conversation defendant's wife had with her minor daughter, D.L. Chapman's counsel attempted to block this testimony at a pretrial hearing and objected repeatedly at trial. Defendant argues such testimony was inadmissible "double hearsay."
Ms. Robin testified at trial that Mrs. Chapman told her that D.L., Mrs. Chapman's minor daughter, told Mrs. Chapman that defendant wanted to put his penis in her mouth.
At trial, the State successfully argued that each component of the multiple hearsay was admissible under La.Code Evid. art. 805:
Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided by legislation.
Hearsay is defined by La.Code Evid. art. 801(C):

*1242 `Hearsay' is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.
The trial court ruled the statements did not violate the hearsay rule.
The layer of hearsay formed by D.L.'s report of the incident to her mother, Mrs. Chapman, was admitted under the "first report" exception to the hearsay rule:
The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
* * * * * *
A statement made by a person under the age of twelve years and the statement is one of initial or otherwise trustworthy complaint of sexually assaultive behavior.
La.Code Evid. art. 804(B)(6).
Chapman complains this exception does not apply, because D.L. did not testify at trial. D.L. did not testify because of a violation of the rule of sequestration. As that matter is separately assigned, we will discuss it in greater detail under the appropriate assignment number. It will suffice to say at this point that the record supports the State's argument that the violation of sequestration resulted directly from Chapman's actions. La.Code Evid. art. 804(A)(5) says:
Except as otherwise provided by this Code, a declarant is `unavailable as a witness' when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court. This includes situations in which the declarant:
* * * * * *
Is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means. A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying.
Thus, no error occurred as to this layer of hearsay.
When Ms. Robin testified at trial, the court overruled Chapman's objections without explanation. Mrs. Chapman's statement to Ms. Robin was the second layer of hearsay complained about.
The State argued at trial that this layer of the double hearsay testimony was not even hearsay by definition. The State now contends Mrs. Chapman's statement was an "excited utterance," made under the shock of what D.L. allegedly told her. We find that it was hearsay. To be admissible it had to qualify as an exception to the hearsay rule.
The "excited utterance" exception is contained at La.Code Evid. art. 803(2):
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * * * * *
(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
The State argues "[t]he statement of Deryl Chapman to Tammy Robin certainly related to a startling event and was made by Deryl Chapman while under the stress caused by that statement of D.L...." There is some merit to the argument but it is not supported by the cases. See State v. Cameron, 485 So.2d 599 (La.App. 4 Cir.1986).
However, even if Ms. Robin's testimony were improperly admitted, the error was harmless. The victim testified, and the State also presented other testimony specifically corroborating her testimony. The victim testified as to the elements of the crime. There was a pornographic videotape introduced at trial and seen by the jury that strongly bolstered the child's credibility, as scenes she described do appear on the tape. (The video will be more fully discussed in a subsequent assignment.) The verdict was surely unattributable to the error. State v. Johnson, 94-1379 (La.11/27/95); 664 So.2d 94.
For the reasons discussed, these assignments have no merit.

*1243 ASSIGNMENTS OF ERROR NOS. 21-22:

These two assignments likewise overlap. Defendant asserts that the district court erred by preventing the defense from asking witness Tammy Robin whether she had ever been present to hear Chapman's wife testify in another proceeding. Additionally, he complains that the district court erred by preventing him from asking Ms. Robin whether she knew Mrs. Chapman had disagreed with her about the conversation relating to D.L. The State had objected to these questions, based upon relevance, and the court sustained the objections.
The mechanics of dealing with this type of situation are illustrated in State v. Huff, 27,212, pp. 15-16 (La.App. 2 Cir. 8/23/95); 660 So.2d 529, 537:
The Huffs complain of the court's limitation of their cross-examination of a witness by not allowing them to question why the witness was late to court.... The defendants wished to cross-examine him about the reason for his tardiness in order to discredit his ability to remember specific details.
The trial court stated that it believed the prejudicial effect of such testimony would outweigh the probative value, and that it `would interfere with getting at the truth of what [the witness] saw the night [of the murder].'
The court shall exercise reasonable control over the mode and order of interrogating witnesses so as to make the interrogation and presentation effective for the ascertainment of truth. LCE Art. 611A(1). A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. LCE Art. 611B. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. LCE Art. 403.
The defendants had ample opportunity to cross-examine the witness and to attack his credibility concerning his ability to remember and to recall relevant past events without delving into his reason for being late on the second day of his testimony. The defendants have not shown how they were prejudiced by the trial court's limitation. We deem the trial court's error, if any is assumed, was harmless.
Defendant in the present case attacked Ms. Robin's credibility in at least seven other areas of cross-examination. His right to cross-examination was not improperly restricted. The assignment has no merit.

ASSIGNMENT OF ERROR NO. 24:
By this assignment, defendant argues that the lower court erred by permitting witness George Murphy to express an opinion as to defendant's apparent reaction to the sight of photographs of a nude female. (See Assignment No. 5.) The witness stated that he was disgusted by the pictures but that Chapman did not appear to exhibit the same reaction.
Chapman complains that the witness was being invited to speculate and that the incident at issue was irrelevant, as it happened approximately 10 years prior to the present charges. The issues of relevance and admissibility of the incident Murphy related were already visited in our discussion under Assignment of Error No. 5. It is not likely that the question and answer carried much weight, but that was for the jury. La.Code Evid. art. 701 says:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
(1) Rationally based on the perception of the witness; and
(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.
The testimony involved a reasonable inference based on the witness's personal observations. The assignment lacks merit.

ASSIGNMENT OF ERROR NO. 26:
In this assignment, Chapman claims the district court erred in overruling a defense objection to hearsay testimony by a prosecution witness, Detective Randall Comeaux. The pornographic film in this case was entitled WHERE THE SUN NEVER SHINES. The detective was allowed to testify to the *1244 account the child victim gave him regarding two episodes she saw in the videotape.
The witness testified:
A: [The victim] advised in her statement that at one point, whenever Mr. Chapman had allegedly molested her, that he had shown her a videotape. To try and corroborate her story, I asked her if she could describe for me some scenes in this videotape which she had seen. She described to me one scene of two men and a woman. And one man was coaching the other man in how to perform oral sex on the woman, and thatI think at one point he patted the man on the head who was performing oral sex and said, "Slowly, slowly." She stated that another scene was of a man and woman, blonde woman, having sex outside on a lawn chair.
Q: Now, did she know the title of this tape?
A: She told me that the tile [sic] she had seen on the tape, on the tape itself was Where The Sun Doesn't Shine [sic].
The State argues that no hearsay violation occurred, because the information was not offered to prove the truth of the matter asserted. Rather, the argument goes, it was offered to provide background for and explain Detective Comeaux's investigative actions. We agree with defendant that this testimony was inadmissible hearsay. This court recently visited a similar issue in State v. Rubin, 94-982 (La.App. 3 Cir. 2/8/95); 649 So.2d 1240, writ denied, 95-1135 (La.10/13/95); 661 So.2d 494. Detective Comeaux's testimony contained more information than was necessary to explain his investigation. It was offered more to bolster the victim's in-court testimony than to actually explain the course of the investigation.
However, hearsay testimony is still subject to a harmless error analysis, i.e., whether the verdict was surely unattributable to the error. The error here was harmless. It merely restated evidence given by the victim, who had testified earlier and had been subject to intensive cross-examination. Furthermore, the jury viewed the pornographic videotape and made its own determination from the victim's in-court description of the videotape whether she had seen it. The assignment has no merit.

ASSIGNMENTS OF ERROR NOS. 27-28:
These assignments relate to the exclusion of Deryl Chapman and her daughter D.L. as defense witnesses at trial. Both were excluded because of violations of the rule of sequestration. The issue is moot as to Deryl Chapman, because she stated for the record that she would invoke her spousal privilege, if called to testify.
The defense argues that Mrs. Chapman and D.L. were not present when the rule was invoked and that it was the trial court's responsibility to inform them of the rule. Chapman argues that the exclusion was prejudicial because they were Chapman's two main witnesses and were excluded from testifying on his behalf. Chapman says that the witnesses could not have violated the rule of sequestration because they were never actually placed under the rule. The two witnesses were not present when the trial judge sequestered the others because counsel for defendant excused them. However, defense counsel agreed to be responsible for advising them of the rule.
The testimony of D.L. and Mrs. Chapman was properly excluded since it was defendant himself who violated the rule. The trial judge conducted a sequestration violation hearing. D.L. and Mrs. Chapman were questioned separately. He found that during the trial defendant discussed testimony with each of the witnesses at home at night, telling them about the testimony of other witnesses. After the showing of the videotape, he talked to D.L., about the videotape and discussed what she and her mother would be talking about in court the next day. At the sequestration violation hearing, D.L. denied that these discussions took place, but Mrs. Chapman admitted they did, even going so far as to admit that if D.L. said the discussions had not taken place, that would be a lie. Mrs. Chapman admitted that the three of them discussed what their testimony would be in court the next day. When the sequestration violation is committed with the consent, connivance, procurement or knowledge of the defendant or defense counsel, *1245 the judge may exclude testimony even though it might interfere with a defendant's right to present a defense. State v. Jones, 354 So.2d 530 (La.1978); State v. Jones, 496 So.2d 638 (La.App. 1 Cir.1986).
In the present case, connivance by defendant is clearly indicated in the record, as the trial judge specifically found. There was no abuse of discretion in his ruling to exclude the testimony.
Assignments 27 and 28 have no merit.

ASSIGNMENT OF ERROR NO. 29:
Defendant contends that the trial court erred in requiring the jury to watch the entire pornographic videotape, WHERE THE SUN NEVER SHINES.
As part of its direct examination of Detective Comeaux, the State played a portion of the videotape. At first, only a portion was shown because, according to the way the trial court explained it to the jury, "the lawyers... agreed that it was not necessary for you to observe the entire film...." What the jury initially saw was limited to the episodes connected to the testimony of the child victim. On cross-examination a question was raised as to whether the correct episodes had been shown. On redirect, the State moved that the entire videotape be played to settle the issue. After a recess the decision was made by the court to grant the State's motion. The defense did not object. Because it had become apparent that the jury, left to its choice, would prefer not to see any more of the videotape, the judge told the jury that the ultimate decision that they see all of it was his, not that of "the lawyers." This was obviously done to shield the lawyers from possible blame by the jury for having to look at something that was offensive to them.
Defendant argues on appeal that the trial judge took an improper activist role, in the sense of introducing evidence on his own motion. Actually, the trial judge was simply responding to a motion made in open court. No objection was ever made to showing a portion of the film, and no objection was ever made to showing the entirety of the film. There was no error.

ASSIGNMENT OF ERROR NO. 30:
Chapman's final argument is that the trial court erred by having discussions with a juror outside the defendant's presence. This contention refers to a recessed chambers meeting between the judge, the two attorneys, and one juror. The minutes reflect that the juror expressed the panel's reluctance to watch the whole tape. Defendant invokes La.Code Crim.P. art. 831(5), which requires that defendant be present at all proceedings when the jury is present.
In State v. Overton, 337 So.2d 1058 (La. 1976), the supreme court explained that if a trial judge communicates with the jury, he should do so in open court and that defendant and his attorney should be present. La.Code Crim.P. art. 832(A) provides that a defendant charged with a non-capital felony "cannot object to his temporary voluntary absence at the proceedings listed in Article 831 if his counsel was present." In the present case, Chapman's counsel was present at the recessed chambers meeting with the juror. Whether or not Chapman's absence was voluntary is not revealed by the record, but neither he nor his counsel objected to his absence at this chambers meeting. Nevertheless, in compliance with Overton we will treat his absence from this meeting as an error patent.
We find no merit to the assignment, however, because the error was harmless. No prejudice could possibly have resulted.

CONCLUSION:
Chapman's conviction is affirmed. However, we amend the sentences to reflect that the defendant is given credit for time served prior to the execution of the sentences. We remand and order the district court to amend the commitment and minute entry of the sentences to reflect that the defendant is given credit for time served.
AFFIRMED WITH INSTRUCTIONS.