691 So.2d 1281 (1997)
STATE of Louisiana
v.
Gerard Clay BORNE, a/k/a Gerard C. Burne.
No. 96-KA-1130.
Court of Appeal of Louisiana, Fourth Circuit.
March 19, 1997.
*1282 Harry F. Connick, District Attorney of Orleans Parish, Theresa A. Tamburo, Assistant District Attorney of Orleans Parish, New Orleans, for the State.
Terry E. Allbritton, Supervising Attorney, Jennifer Biezup, Student Attorney, Appellate Advocacy Program, Tulane Law School, New Orleans, for Defendant.
Before BYRNES, LOBRANO and PLOTKIN, JJ.
BYRNES, Judge.
Gerard C. Borne appeals his conviction and sentence for aggravated rape and aggravated crime against nature. We affirm.
Testimony established that the victim, B.L., was the minor son of D.L. and J.L. and was twelve years old at the time of trial. The victim testified that the defendant, Gerard C. Borne, a family friend, raped and molested him on three separate occasions. Gerard Borne worked for J.L. as a chef at a café during the summer of 1993. D.L. and J.L. were divorced in December 1993. In the spring of 1994, Borne offered and took the victim to a church function with his stepdaughter and one of her friends. On two other occasions, Borne took the victim and his stepdaughter to Celebration Station and Chuck E. Cheese. In April and May of 1994, Borne called Mrs. L. on several occasions offering to pick the victim up from school.
On the first occasion, Borne was to take the victim to his baseball game. After picking up the victim from school, Borne stopped at a Time-Saver to purchase several magazines and then they went to Borne's house. When Borne told the victim to take off his clothes, the victim thought he meant to put on his baseball uniform. The victim locked the door and was changing in the bedroom when Borne demanded to be let in and finally kicked the door open. Borne told the victim to take off his clothes and pushed him on the bed. Borne anally penetrated the victim, repeatedly fellated him, masturbated himself until he ejaculated onto the victim, and forced the victim to fellate him. Borne also forced the victim to look at pornographic magazines while he molested the victim. Borne then cleaned the victim, told the victim to get dressed, threatened to harm his family if he told anyone what had happened, and then delivered him to his baseball game. The victim met his mother at the baseball game, but he did not tell his mother because Borne had threatened to hurt her.
On the second occasion, Borne picked up the victim from school and was supposed to take him to the YMCA. Instead, Borne took the victim to his house and showed him an adult videotape. While the tape played, Borne instructed the victim to remove his clothes, fellated the victim, forced the victim to fellate him, and annally penetrated him. Borne showed him adult magazines. The victim saw Borne administer an injection to himself. Borne threatened to hurt the victim's parents if the victim told them anything, and took the victim to the YMCA where he was picked up by his mother.
The victim testified that on a third occasion Borne made arrangements with the victim's mother to pick him up after school and that he did not want to go with Borne. Borne took the victim to his house and instructed him to remove his clothes. Borne fellated the victim, forced the victim to fellate him, and anally penetrated the victim. Borne showed him adult magazines again. Borne then took the victim to the YMCA and then brought him back to his mother.
For several months, the victim did not tell anyone of these incidents. In the fall of 1994, he told his mother that Borne had inappropriately touched him because it had been bothering him and he was afraid that it would happen again. The victim gradually told his mother the remaining details. The victim related that these events occurred between the start of baseball season in April and the end of school in June 1994.
*1283 The victim indicated that he had experienced problems previously in school necessitating that he repeat the second grade. As a result, he saw a counselor and his grades improved until he was raped by Borne.
The victim described the adult magazines that Borne showed him and identified some of them in court. The trial court recessed to allow the victim to view approximately thirty seconds of the videotape taken from Borne's residence. The victim testified that the video was the type of material that Borne had shown him but the victim could not tell whether it was the same tape. The victim identified Borne in court.
Mrs. L. testified that the victim's school grades had dropped in the spring and fall of 1994. In April and May of 1994, she and the victim's father noticed several bruises on the victim's legs and arms. The victim told his parents that he got hurt at baseball practice. However, after the victim told them of Borne's molestation, the victim related that Borne had caused the bruises.
Mr. L. testified that the victim was his son from his marriage with D.L. He admitted that he has two prior convictions arising from cocaine and marijuana use in the 1970's. Borne worked for Mr. L. as head cook at his cafe' where Borne met the victim. Mr. L. and Borne agreed that Borne would terminate his employment at the cafe' because of his difficulty in getting along with the other employees. Mr. L. was aware that Borne continued to see the victim, and he did not object. When Mrs. L. called to inform him that the victim reported being raped by Borne, Mr. L. called the police after consulting with two attorneys. In retrospect, Mr. L. noticed behavior changes in the victim that corresponded to his molestation. On cross-examination, he also admitted to pleading guilty to issuing worthless checks.
Sergeant Al Bowman of the New Orleans Police Department Child Abuse Division handled the investigation. After interviewing the victim and his parents, Bowman obtained a search warrant for Borne's residence. Several pornographic magazines and two pornographic videotapes were found in the defendant's bedroom closet. Bowman subsequently arrested the defendant. He agreed that the search of Borne's residence did not reveal narcotics, and that none of the sexually-explicit material was child pornography.
The trial court found that Dr. Kathryn Coffman, was an expert in pediatrics and child sexual abuse. She identified a sexual abuse evaluation of the victim, which she prepared after interviewing the victim and his parents. The victim recounted three occurrences during which the victim was molested. Dr. Coffman found no physical signs of trauma and did not expect to find any because of the nature of the acts and the time elapsed.
Michael Parr testified for the defense that he knew the defendant through the New Orleans Culinary Association, of which the defendant was the membership chairman. The association regularly held meetings on the fourth Monday of every month from 3:00 p.m. to 6:00 p.m. Mr. Parr related that if the defendant was not working offshore, the defendant would be at the meeting although Parr could not specifically recall if the defendant was present for the April, May, and June meetings in 1994.
Karen Borne, the defendant's wife, testified that the defendant was a good husband and a good father. When the defendant was not working offshore, he would take his stepdaughter to school. He would pick her up from school at 3:00 p.m. and then pick up Mrs. Borne from work between 5:00 and 5:00 p.m. She did not recall Borne ever failing to pick up his stepdaughter in April or May when he was not working offshore. Mrs. Borne testified that they had only one car. She also stated that she knew the defendant had the pornographic magazines and one pornographic videotape in the bedroom closet.
The defendant's stepdaughter testified that the defendant never touched her inappropriately. The defendant was a good father. When the defendant was not working offshore, he would pick her up from school, and they would watch television until they picked up her mother at 5:00 p.m.
Adrienne Gray, testified for the defense that he is the personnel recruiting manager for Global Marine Drilling Company. He *1284 identified the deck logs of the BALTIC I rig in the Gulf. The deck logs indicated that Borne worked in 1994 as chief steward from March 16-29, April 13-26, May 11-21, and June 7-20. Mr. Gray also stated that the company has a pre-employment drug testing program. The defendant's position with Global was terminated in 1995 when he failed to appear for work, but he was not terminated because of any drug-related issues.
Mr. Ferdinand Schaff testified for the defense that he rented the house to the Bornes from August 1991 to May 1995. Mr. Schaff stated that the Bornes made no changes or alterations to the house. He reviewed photographs of the residence and stated that the bedroom door did not appear to be "kicked in." He opined that the door and its hinges and lock had not been altered during the Bornes' tenancy.
After a trial on July 17-18, 1995, the jury found the defendant guilty as charged of aggravated rape in violation of La. R.S. 14:42A(4) and aggravated crime against nature in violation of La. R.S. 14:89.1. On September 13, 1995, the court denied the defendant's motions for a new trial and post judgment verdict of acquittal. On October 19, 1995, the trial court sentenced the defendant to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence on the aggravated rape conviction. The defendant was also sentenced to fifteen years at hard labor without benefit of probation, parole or suspension of sentence on the aggravated crime against nature conviction. Borne's appeal followed.
A review of the record for errors patent reveals none.
The defendant initially argues that the trial court erred when it refused to grant his motion for continuance. On the morning of trial, the defendant requested a continuance on the basis that the clerk of court's office had failed to subpoena various witnesses who were not present. When the trial court denied the defendant's motion, the defendant discharged his trial counsel and sought a continuance on that basis. The trial court again denied the motion and appointed counsel to represent the defendant.
La.C.Cr.P. article 707 provides:
A motion for continuance shall be in writing and shall allege specifically the grounds upon which it is based and, when made by a defendant, must be verified by his affidavit or that of his counsel. It shall be filed at least seven days prior to the commencement of trial.
Upon written motion at any time and after contradictory hearing, the court may grant a continuance, but only upon a showing that such motion is in the interest of justice.
Pursuant to La.C.Cr.P. article 709, a motion for continuance based upon the absence of witnesses must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
La.C.Cr.P. article 709.
The granting or denying of a motion to continue lies within the trial court's discretion. La.C.Cr.P. article 712. A denial is not grounds for reversal absent an abuse of discretion and a showing of specific prejudice. State v. Benoit, 440 So.2d 129 (La.1983); State v. Evans, 514 So.2d 588 (La.App. 4 Cir.1987), writ denied, 519 So.2d 113 (La. 1988).
In the present case, the defendant orally requested a continuance on the morning of trial on the basis that only one of his witnesses was present. The defendant alleged that he requested subpoenas be sent to twenty-five witnesses but the clerk of court's office failed to process the request. At the hearing on the motion to continue, the trial court requested the names of the witnesses and the testimony the defendant sought to elicit from these witnesses. The court stated that it would grant a recess to allow each *1285 side an opportunity to insure that their witnesses would be available the following day. The defendant stated that an alibi witness, Mr. Karl Tipton, was out of town for the week. Mr. Tipton would testify that he and the defendant are members of the Culinary Federation and that the defendant attended the association's meetings which were held the last Monday of each month. The defendant also stated that Mr. Wilhelm Bogen and another unnamed witness would testify similarly. Other witnesses included the victim's teachers and principal, the defendant's employer, the defendant's landlord, the defendant's stepdaughter's teacher, and police officers involved in the search of the defendant's residence. The defendant had not spoken with most of the witnesses and did not know what some of the witnesses would say.
Michael Parr, a member of the American Culinary Federation, appeared for trial and testified that when the defendant was not working offshore, the defendant attended the association's meetings. Adrienne Gray, the personnel recruiting manager for Global, the defendant's employer, testified concerning the dates that the defendant was working offshore. The defendant's landlord, Ferdinand Schaff, also testified at trial. The defendant was also permitted to call the police officers as witnesses at trial even though he had not subpoenaed them.
A review of the hearing transcript reveals that the defendant did not meet his burden under La.C.Cr.P. article 709. While the defendant stated the substance of some of the witnesses' testimony, he could not provide the court with such information for all the witnesses he alleged were unavailable. Further, the defendant did not show that there was a probability that the witnesses would be available at the time to which the trial would have been deferred. The defendant also failed to show that due diligence was used in an effort to procure attendance of the witnesses. The defendant did not contact some of the witnesses prior to trial to insure their availability. The trial court did not abuse its discretion when it denied the defendant's motion to continue.
The defendant also contends the trial court erred when it allowed the State to introduce the pornographic videotape into evidence. The defendant argues that since the victim could not positively identify the tape as the one shown him by the defendant, the State failed to provide a sufficient foundation for the admissibility of the videotape.
A lack of positive identification or defect in the chain of custody goes to the weight of the evidence rather than its admissibility. State v. Merrill, 94-0716 (La.App. 4 Cir. 1/31/95), 650 So.2d 793, writ denied, 95-0530 (La.6/23/95), 656 So.2d 1012. In order to introduce demonstrative evidence at trial, the law requires that the object be identified. This identification may be visual (i.e., by testimony at the trial that the object exhibited is the one related to the case) or it may be by chain of custody (i.e., by establishing the custody of the object from the time it was seized to the time it was offered into evidence). State v. Sweeney, 443 So.2d 522, 528 (La.1983). For admission of demonstrative evidence, it suffices that it is more probable than not that the object is the one connected to the case. State v. Frey, 568 So.2d 576, 578 (La.App. 4 Cir.1990), writ denied, 573 So.2d 1118 (La.1991).
In the present case, Sergeant Al Bowman testified that he obtained a search warrant for the defendant's residence. The officer found several pornographic magazines and two pornographic videotapes during the search of the residence. At trial, Sergeant Bowman identified the videotape as one of the tapes he seized pursuant to the search warrant. After viewing the tape, the victim testified that it contained the same type of material as the tape he saw at the defendant's house. The people in the tape were doing the same things that the people did in the videotape he was forced to watch by the defendant. He stated "it's the same type of tape but I don't remember thethe act actress, actresses."
The testimony of Sergeant Bowman and the victim establishes that the videotape is more probably than not connected to the case. The victim testified that the defendant made him watch a pornographic videotape while the defendant molested him. The victim stated that the videotape was kept in the *1286 defendant's bedroom closet with the pornographic magazines. Mrs. Borne, the defendant's wife, acknowledged that her husband kept pornographic magazines and videotapes in his bedroom closet. The videotape introduced at trial was found in the defendant's bedroom closet along with the pornographic magazines. The victim testified that while he could not remember whether the actors were the same, the substance of the tape he viewed at trial was of the same type he was forced to watch by the defendant. Thus, the state produced sufficient foundation for the admissibility of the videotape. The trial court did not err in allowing the videotape to be introduced into evidence.
The defendant further contends that the videotape was irrelevant and constituted improper character evidence. He suggests that the videotape allowed the jury to improperly infer that he was a bad person. However, the videotape was admissible as part of the res gestae of the crime. La. C.E. article 404 provides, in pertinent part:
B. Other crimes, wrongs, or acts.
(1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
In State v. Osborne, 593 So.2d 888 (La. App. 2 Cir.1992), writ denied, 93-0781 (La.4/21/95), 653 So.2d 557, the defendant was convicted of the aggravated rape of his daughter. The victim testified at trial that as prelude to the rape, the defendant made her view pornographic materials. On appeal, the defendant argued that testimony concerning the alleged viewing of pornographic material should not have been admitted. The appellate court affirmed the trial court's ruling and held that "[t]he viewing of the pornographic materials as a prelude to intercourse was connected with and part of the other admissible acts of sexual intercourse." Osborne, 593 So.2d at 891. The Second Circuit also has held that photographs taken of a victim by the defendant immediately prior to molesting the victim were admissible as part of the res gestae of the crime. State v. Zihlavsky, 505 So.2d 761 (La.App. 2 Cir. 1987), writ denied, 511 So.2d 1152 (La.1987).
In the present case, the victim testified at trial that the defendant forced him to watch the pornographic videotape while the defendant molested him. As in Osborne, the viewing of the tape constituted an integral part of the crime. Thus, the videotape was relevant and admissible.
The defendant also claims that the trial court erred when it refused to allow the defendant to introduce his drug test results into evidence.
At trial, the victim testified that on one occasion, he saw the defendant inject himself with a substance. Sergeant Bowman stated that the victim believed the substance was cocaine. The defendant did not object to the testimony elicited from Sergeant Bowman.
Later in the trial, the defendant sought to introduce the results of a pre-employment drug test taken upon his employment with Global Marine. The State objected to the introduction of the test results on the basis that there was no testimony from the person or persons who conducted the examination. The trial court sustained the objection but allowed the defendant to proffer the test results.
The defendant asserts that the test results were admissible under La. C.E. article 803(6) which provides for the business record exception to the hearsay rule. The article provides:
A memorandum, report, record, or date compilation, in any form, including but not limited to that which is stored by the use of an optical disk imaging system, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with *1287 knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under which the statement would not be excluded by the hearsay rule. [Emphasis added.]
Adrienne Gray, the personnel recruiting manager for Global Marine (the defendant's employer), testified at trial concerning the dates the defendant worked offshore. Mr. Gray produced documentation kept by the company in support of his testimony. The witness identified the deck logs kept on the BALTIC I, the rig on which the defendant worked. Mr. Gray testified that these documents were kept in the normal course of their business. The state acknowledged that Mr. Gray was the custodian of these documents. The witness also identified the payroll sheets indicating the hours worked by the defendant. The trial court would not allow Mr. Gray to authenticate the defendant's drug test results, stating that he did "not find this witness would be a witness that would be appropriate to comment on what D-5 purports to memorialize." There was no testimony elicited on whether Mr. Gray was the custodian of such documents. Mr. Gray stated that all new employees were required to take pre-employment drug tests and to agree to be subject to random drug testing upon employment. Gray also testified that the defendant was not terminated because of a violation of drug policies. There was no testimony elicited as to who had custody of the test results, who conducted the drug testing, and whether the test results were kept as records in the regular course of business. Further, the defendant did not suffer any prejudice from the trial court's ruling. The jury was informed, through the testimony of Mr. Gray, that the defendant was not terminated because of drug usage. The jury therefore was allowed to infer that the defendant did not use drugs. The defendant accomplished the same result through the testimony of Adrienne Gray.
Without any further testimony as to who had custody of the test results, it cannot be said that the trial court erred in not allowing the defendant's test results to be placed into evidence.
Accordingly, the defendant's convictions and sentences be affirmed.
AFFIRMED.
PLOTKIN, J., dissents with reasons.
PLOTKIN, Judge, dissenting.
On the morning of trial, the defense sought a continuance because of the unavailability of one alibi witness and because several defense witnesses had not been served by the clerk of court. In the bill of information, it was alleged that Borne committed the offenses "between the 15th of March, 1994, through the 15th of June." By bill of particular, the State added that the crimes were alleged to have occurred on weekdays between the hours of 3 p.m. and 6 p.m. Defense counsel indicated that between fifteen and twenty-five alibi witnesses were necessary because the State was unable to allege more specifically when the crime was committed. Only one defense witness was available on the morning of trial. After hearing argument, the judge refused to continue the trial but indicated that if the testimony of witnesses for the State clarified the time of the offense, he would recess the trial to permit the defense to obtain an appropriate alibi witness. The majority finds that the defense did not meet his burden under Article 709. The defense argued that this case is exceptional and that under these circumstances this article should be deemed satisfied. I agree.
On May 11, 1995, defense counsel filed a witness list with the trial court. On June 22, 1995, defense counsel filed with the trial court a motion for order to subpoena the witnesses on the witness list, which was granted. The State does not contend that these actions were not timely. At trial and *1288 on appeal, defense counsel contends that the clerk's office failed to serve defense witnesses in accordance with the order.
A defendant's right to compulsory process is guaranteed by the federal and Louisiana constitutions and effectuated through Article 731 of the Louisiana Code of Criminal Procedure. See U.S. Const. Amend. 6; La. Const. Art. I, § 16; see also State v. Hammler, 312 So.2d 306, 313 (La.1975). The right to compulsory process is the right to demand subpoenas for witnesses and the right to have those subpoenas served. See, e.g., State v. Latin, 412 So.2d 1357, 1361 (La.1982).
A review of the jurisprudence suggests that there may be inadequacies both in the mechanisms intended to provide criminal defendants with access to compulsory process and in the use of these mechanisms by defense attorneys. Unlike in State v. Turner, 352 So.2d 1007, 1010 (La.1977), cert. denied, 435 U.S. 1009, 98 S.Ct. 1882, 56 L.Ed.2d 392 (1978), in State v. Ballard, 337 So.2d 481, 482-83 (La.1976), in State v. Terry, 359 So.2d 172, 173-74 (La.1978), or in State v. Lee, 446 So.2d 334, 342 (La.App. 4th Cir.1984), however, it does not appear, nor is it asserted by the State, that the defense was in any way responsible for the failure of compulsory process in the instant case. Instead, as in State v. Curtis, 138 La. 911, 915, 70 So. 878, 880 (La.1916), defense counsel "had done all the law demanded to entitle him to have his witnesses summoned, and, if necessary, brought into court by compulsory process, ...."
In arguing the motion to continue, defense counsel provided the names of several of twenty-five witnesses that should have been subpoenaed for the defense.[1] Defense counsel argued that these witnesses were necessary to establish the defendant's patterns in attending American Culinary Foundation meetings, in picking up his stepdaughter from an after school care program, and in taking his stepdaughter to a gymnastics program at the YMCA.
In denying the defense's request for a continuance, the trial judge indicated that a continuance was not necessary because, in part, the State was unable to allege with any specificity when the offense occurred. Thus, the judge ordered that trial proceed but he stated that if testimony were elicited from the State's witnesses which more precisely fixed the time of the offense, then he would recess the trial to permit the defense to locate an appropriate alibi witness. An implication of the trial judge's ruling is that if the time of the offense were left indeterminate, then many of the defendant's alibi witnesses would be unnecessary.
The jurisprudence has consistently held that the date of the offense is not an essential element of the crime of rape. See, e.g., State v. Johnson, 95-1002, p. 8 (La.App. 3d Cir. 3/6/96), 670 So.2d 651, 656. The State is often not required to inform a defendant of the exact dates or times at which the offenses are alleged to have occurred because of the difficulty in obtaining this type of information in the context of repeated sex offenses. See, e.g., State v. Kohl, 524 So.2d 781, 784 (La.App. 3d Cir.1988). As a result, a defendant who wishes to present an alibi defense to the charges of repeated sex offenses at unspecified dates and times faces a unique burden. Such a defendant's alibi must consist of testimony which convincingly establishes a pattern of activity that precludes his commission of the offense during *1289 all times at which he could have committed the crime.
Unlike in State v. Ether, 572 So.2d 689, 690-91 (La.App. 4th Cir.1990), much of the alibi testimony which was effectively excluded by the trial judge in the instant case was not wholly cumulative. Although one witness testified that the defendant generally attended American Culinary Foundation meetings, he could not recall specifically whether the defendant was at any particular meeting. Although the defendant's wife and stepdaughter testified that the defendant generally picked up the stepdaughter from an after school care program, other witnesses could have provided more specific memories and also established the defendant's pattern of taking the stepdaughter to a gymnastics program.
I do not agree with the trial judge that absent a specifically alleged time and date, the alibi witnesses who testified were sufficient and others would have been simply cumulative. Because of the nature of the allegations against the defendant, additional witnesses were necessary to sufficiently establish his patterns of movement to constitute a viable alibi. Moreover, the nonattendance of defense witnesses was precipitated through the neglect of the clerk's office through no fault of the defense. Accordingly, I would find that the trial judge abused his discretion in denying the defense's request for a continuance. Under the circumstances of this case, I would find this error alone sufficient to entitle the defendant to a new trial. The remaining assignments of error, however, further support my belief that this defendant was denied a fair trial.
In his second assignment of error, Borne contends that the trial judge improperly admitted as evidence the adult videotape that was seized from his residence. Specifically, he contends that there was no foundation for the admission of the videotape, that the prejudicial effect of the videotape substantially outweighed its probative value, and that the videotape constituted impermissible character evidence.
The victim reported to the police that he was shown an adult video during the commission of the crime. The police searched Borne's residence and found a videotape on which were recorded four adult videos: Lust American Style, Smooth as Silk, The Pleasure Seekers, and Channeled for Lust. The State concedes that none of the adult materials seized from Borne's residence amounted to child pornography.[2]
When the viewing of pornographic materials is a prelude to a sex offense, the viewing is generally held to be an integral and inseparable part of the subsequent offense. See, e.g., State v. Osborne, 593 So.2d 888, 890-91 (La.App. 2d Cir.1992), writ denied, 93-0781 (La.4/21/95), 653 So.2d 557. As in State v. Chapman, 96-152, p. 6 (La.App. 3d Cir. 10/9/96), 683 So.2d 1236, 1239-40, the instant offense involves the viewing of an adult videotape. Unlike in Chapman, however, the videotape does not reflect the defendant's taste for pornographic material related to the crime charged. See id.
At trial after being shown a brief excerpt, the victim was unable to verify that it was the same tape. Instead, the victim testified only that the excerpt he was shown contained similar content, i.e., adults engaged in explicit sexual activities.[3] I respectfully disagree with the majority's determination that this testimony was sufficient to establish that it was more probable than not that the adult videotape seized from Borne's residence was connected to the crime. Cf. State v. Tauzier, 397 So.2d 494, 502 (La.1981). Instead, I would find that the trial judge's ruling that the videotape was relevant and could be admitted was incorrect and a clear abuse of discretion. Although this error might be deemed harmless in the presence of overwhelming *1290 evidence, in the context of the defendant's inability to present alibi witnesses and the third assignment of error, discussed below, I cannot readily dismiss it.
In his third assignment of error, Borne contends that the trial judge improperly excluded evidence that Borne had passed a drug test, which was offered to rebut the victim's testimony that he watched Borne inject a white substance. The trial judge ruled that the report was hearsay, that it did not qualify as a business record under of Code of Evidence article 804(B)(5), and that the report was cumulative with the testimony of Mr. Gray of Global Marine.
Article 804(B)(5) creates an exception to the rule that hearsay is not admissible for records of regularly conducted business activity when the declarant is unavailable and the requisites of the article are satisfied. Adrienne Gray testified as personnel recruiter for Borne's former employer, Global Marine, that all recruits passed a drug screen before they were hired. All employees were then subject to random drug testing and if any failed they would be terminated. Mr. Gray testified that Borne was fired when he failed to report to work and not as a result of a positive drug screen. The jury could infer from this testimony that Borne had passed all drug screens. In another context it might have been within the discretion of the trial judge to exclude the drug testing reports and the error, if any, considered harmless. Under the circumstances of this case, however, I cannot find the cumulative effect of these three rulings harmless.
For the foregoing reasons, I would reverse Borne's conviction and remand the case for a new trial.
NOTES
[1] Of these twenty-five witnesses, four were called by the State and six were called by the defense to testify at trial. One was a records custodian who presumably would have been called in regard to Dr. Coffman's report. Fourteen others did not testify at trial. Of those who did not testify, four are associated with the victim's school and could have testified in regard to the victim's school performance and behavior; one was associated a recreation department and could have testified in regard to the victim's baseball games; one is associated with the YMCA and could have testified regarding the defendant's pattern in taking his stepdaughter to the gymnastics program; one is associated with the after school care program for the defendant's stepdaughter and could have testified regarding his pattern in picking up this child; two are associated with the American Culinary Foundation and could have testified regarding the defendant's attendance at foundation meetings; two are officers involved in the investigation; one is associated with the defendant's former employer, Global Marine; and one was intended to be a character witness. The significance of the remaining witness is unknown.
[2] In fact, one of the magazines seized is titled "Over Forty."
[3] Defense counsel attempted to elicit further details regarding the contents of the videotape from the victim. On cross exam, the victim testified that the videotape contained, among other activities, explicit male homosexual activity. This court has reviewed the tape seized and found no male homosexual activity. I do not find this inaccuracy particularly significant considering that the nature of the tape and that the child was being raped when he saw it. However, it does cause me to further question the trial judge's decision to admit the tape.