# Supreme Court of Louisiana

The Opinions handed down on the **17th day of March, 2015**, are as follows:

**PER CURIAM**:

2014-KD-1526      STATE   OF   LOUISIANA   v.   DAVID   J.   KOEDERITZ   (Parish   of
                  Orleans)(Second Degree Battery and False Imprisonment)

                  Judge Scott J. Crichton, assigned as Justice ad hoc, sitting for
                  Justice Jeffrey P. Victory, for oral argument.  He now sits as an
                  elected Associated Justice at the time this opinion is rendered.

                  Accordingly, the decision of the district court is reversed in
                  part and affirmed in part and this case is remanded to the court
                  for further proceedings.
                  REVERSED IN PART; AFFIRMED IN PART; CASE REMANDED.

                  CRICHTON, J., additionally concurring.

03/17/15

SUPREME COURT OF LOUISIANA

NO. 2014-KD-1526

STATE OF LOUISIANA

VERSUS

DAVID J. KOEDERITZ

ON SUPERVISORY WRITS TO THE CRIMINAL
DISTRICT COURT FOR THE PARISH OF ORLEANS

PER CURIAM:[1]

The rulings of the courts below are reversed in part and this case is remanded to the trial court for further proceedings consistent with the views expressed herein.

In this pending prosecution for second degree battery in violation of La. R.S. 14:34 and false imprisonment, La. R.S. 14:46, defendant filed a motion to exclude from trial portions of the medical records from Ochsner Hospital in New Orleans, documenting the victim's treatment for a broken nose and black eye in the spring of 2013. According to those records, the victim, defendant's estranged girlfriend and mother of his child, appeared in the emergency room at Ochsner on February 23, 2013 and "report[ed] physical altercation with boyfriend." The state alleges that her injuries occurred on February 19, 2013, when the victim paid defendant a visit, and he kept her confined in the following days to allow her injuries to heal. The victim's initial report and treatment of her physical injuries led to a follow-up session in the hospital with Dr. Milton Anderson, a psychiatrist, on February 25,

_____

[1] Judge Scott J. Crichton, assigned as Justice ad hoc, sitting for Justice Jeffrey P. Victory, for oral argument. He now sits as an elected Associated Justice at the time this opinion is rendered.

2013, in which she again identified defendant as her assailant and informed the doctor that "this isn't the first time he hit me." Those statements prompted a discussion with the psychiatrist of how she could change the pattern of behavior that led to the incident. The discussion also prompted a change in the victim's medication previously prescribed for depression and mood disorders. At that time, the victim made clear she did not intend to file a complaint with the police but the diagnostic impression was "victim of domestic violence" and depression. The records indicate that on February 27, 2013, hospital personnel urged the victim to call the police to report the incident during another follow-up visit in which she reported "that altercation occurred last week near magazine st as the reason for her ED visit." At first, the victim resisted the advice and walked out but she returned with her mother who stated that "this isn't the first time he's done this to her." The record of this visit indicates that the hospital personnel in fact called the police. An officer responded and drew the victim aside in an unrecorded conference. It appears, however, the victim did not make a formal complaint to the police until three weeks later, after which a warrant issued for defendant's arrest. Defendant was apparently not arrested on the warrant until nearly a year later in January 2014.

Defendant also moved to exclude three letters ostensibly written by the victim, one before the incident that formed the basis of the instant prosecution, and two written months afterwards. The state alleges that the victim subsequently committed suicide in the spring of 2014. Given the unavailability of the victim, the state intends to introduce the medical records and letters in lieu of her live testimony at trial.

The trial court granted the defense motions on grounds that introduction of the documentary evidence in substitution of the victim's live testimony would constitute hearsay in violation of Louisiana's evidentiary rules and would trench on defendant's Sixth Amendment right of confrontation. The court specifically found

2

that the victim's statements to the medical personnel at Ochsner were not reasonably related to the treatment and diagnosis of her injuries and were therefore inadmissible as a matter of the hearsay exception provided by La. C.E. art. 803(4). For much the same reason, the court characterized the statements as testimonial for purposes of the Confrontation Clause and therefore inadmissible, given the lack of prior cross-examination. The court further ruled that the letters constituted inadmissible other crimes evidence, even assuming they were properly authenticated and sufficiently connected defendant to the alleged incidents.

In a split-panel decision, the Fourth Circuit denied the state's application for review. State v. Koederitz, 14-0709 (La. App. 4 Cir. 8/22/14) (Ledet, Jenkins, JJ.) Dissenting from that order, Judge Lobrano stated her view that the victim's statements recorded in the medical records were admissible as a matter of hearsay exception provided by La. C.E. art. 803(4). Koederitz, 14-0709 at 7 (Lobrano, J., dissenting) ("The victim in this case had an ongoing and tumultuous relationship with the defendant, her former boyfriend and the father of her child. That fact was, at the least, reasonably pertinent to the victim's treatment due to past trauma inflicted on the victim by the defendant. The medical professionals' treatment of the victim, including that of her psychiatrist, Dr. Anderson, was predicated upon this fact. As such, the victim's statements identifying the defendant as her abuser to medical personnel were reasonably pertinent to her treatment, and thus are admissible under La. C.E. art. 803(4)."). For virtually the same reasons, Judge Lobrano viewed the victim's statements as non-testimonial for purposes of the Confrontation Clause despite the lack of a prior opportunity for cross-examination. Id. at 8-9 ("The records indicate that the victim, at the time the statements were made, specifically intended not to report defendant's actions to the police. Thus, I can only conclude that the statements are non-testimonial . . . because they were made with no reasonable belief that they would later be used in a trial."). Finally,

3

with respect to the letters, Judge Lobrano found that the trial court did not abuse its discretion in excluding the two letters written well after the February 2013 incident, portions of which appeared either clearly testimonial because they referred to the ongoing criminal prosecution of defendant, or mentioned past incidents of abuse, but also found that the court erred in excluding a January 2012 letter in its entirety. Id. at 10 ("[A]ssuming [the] letter, which is addressed to the defendant, is properly authenticated at trial, see La. C.E. art. 901, the portions of the letter where the victim expresses her then-existing mental, emotional, or physical condition are admissible and relevant to explain the nature of the victim's relationship with the defendant.").

This Court granted the state application for review because we agree with Judge Lobrano that the statements made in the present case by the victim to her treating physicians identifying the person who struck her repeatedly in the face and broke her nose, as recorded in the certified records from Ochsner Hospital, are admissible under the hearsay exception in La. C.E. art. 803(4), and as a matter of the Confrontation Clause, because they were made for the non-testimonial purposes of, and were reasonably pertinent to, medical treatment, and diagnosis in connection with medical treatment, in a case that appeared to be one of domestic violence and that involved not only treatment of the victim's physical injuries but also psychiatric counseling.

Louisiana subscribes to the general rule that the hearsay exception in La. C.E. art. 803(4) ordinarily does not encompass statements ascribing fault in the cause of the injuries treated. See Comment (b) to Exception (4)(b) ("The phrase 'reasonably pertinent to treatment or diagnosis in connection with treatment' has been interpreted to limit the scope of this exception to the kind of statements that are usually relied upon by physicians in their diagnosis and treatment of patients. Thus, statements as to the cause of a condition not reasonably pertinent to

4

diagnosis or treatment of it are not within the ambit of this exception.") (*citing* Fed.R.Evid. 803(4), Advisory Committee's Note (statements as to fault would ordinarily not qualify) (other citations omitted).  See, e.g., State v. Juniors, 03-2425, p. 44 (La. 6/29/05), 915 So.2d 291, 325 (upholding exclusion of medical records offered by the defendant containing the statement that the victim had been shot "by a disgruntled employee" because the statement by an unidentified person "was not reasonably related to diagnosis and treatment" of the victim suffering from a gunshot wound to the head, "and, thus, was not admissible as an exception to the hearsay rule pursuant to LSA-C.E. art. 803(4)."); see also State v. Baldwin, 96-1660 (La. 12/12/97), 705 So.2d 1076, unpub'd appx. at xxii (trial court erred in admitting statement by victim to hospital personnel that she had been "beat[en] up by [her] husband" because the hearsay exception in Article 803(4) was "not so broad as to cover a statement as to the identity of the perpetrator.")(citing Official Comment (b)).

The hearsay exception provided by article 803(4) has, however, received particular application in cases of child sexual abuse, including statements of fault, because "'the legislature has expressed an overriding interest in protecting child victims of sexual abuse by encouraging the admission of reliable hearsay evidence for the trial court to weigh.'"  State v. Brown, 97-2260, p. 8 (La. App. 4 Cir. 10/6/99), 746 So.2d 643, 648 (*quoting* Folse v. Folse, 98-1976, p. 19 (La. 6/29/99), 738 So.2d 1040, 1050, and upholding admission of six-year old victim's statement to a hospital physician that her father had put his penis in her) (footnote omitted). We recognize, as Judge Lobrano concluded, that La.C.E. art. 803(4), like its federal counterpart in Fed. R. Evid. 803(4), may encompass other instances in which the identity of a perpetrator plays an integral role in medical treatment and diagnosis in connection with that treatment.  See, e.g., United States v. Joe, 8 F.3d 1488, 1494-95 (10th Cir. 1993) (Although "a declarant's statement relating the

identity of the person allegedly responsible for her injuries is not ordinarily admissible under Rule 803(4) because statements of identity are not normally thought necessary to promote effective treatment. . . . The identity of the abuser is reasonably pertinent to treatment in virtually every domestic sexual assault case, even those not involving children. . . . The physician generally must know who the abuser was in order to render proper treatment because the physician . . . . may recommend special therapy or counseling and instruct the victim to remove herself from the dangerous environment by leaving the home and seeking shelter elsewhere.") (citations omitted).

Given evolving jurisprudence and in accord with other courts, any contrary expression in Baldwin notwithstanding, we see no principled basis for confining statements of fault under La.C.E. art. 803(4) solely to cases involving domestic sexual assault, whether of adults or children, as opposed to other instances of physical assault and abuse taking place in a context that may be fairly described in terms of domestic violence. See, e.g., Moore v. City of Leeds, 1 So.3d 145, 150 (Ala. Crim. App. 2008) (rationale for admitting statements of identity by a minor receiving treatment for sexual abuse "would also apply to victims of domestic violence."); State v. Williams, 137 Wash. App. 736, 154 P.3d 322, 328 (2007) ("Generally, statements of fault are inadmissible, but much, of course, depends on the context in which such statement are made. In domestic violence and sexual abuse situations, a declarant's statement disclosing the identity of a closely-related perpetrator is admissible under [Evidence Rule] 803(a)(4) because part of reasonable treatment and therapy is to prevent recurrence and future injury.") (internal quotation marks and citations omitted); Oldman v. State, 998 P.2d 957, 961-62 (Wyo. 2000) ("Identity rarely is germane to the promotion of treatment or diagnosis, but we, as well as other courts, have recognized that such statements can be relevant to treatment in instances of child abuse. . . . There is no logical reason

6

for not applying this rationale to non-sexual, traumatic abuse within a family or household, since sexual abuse is simply a particular kind of physical abuse.") (citations omitted).

This jurisprudence reflects the <u>current</u> integrated approach to the treatment of domestic violence cases in the medical community.  <u>See</u> American Medical Association Policy Statement on Family and Intimate Partner Violence H-515.965 Chicago: AMA (2014) (advocating that physicians: (a) "Routinely inquire about the family violence histories of their patients <u>as this knowledge is essential for effective diagnosis and care</u>;" and (e) "Screen patients for psychiatric sequelae of violence and make appropriate referrals for these conditions upon identifying a history of family or other interpersonal violence.") (emphasis added); <u>see also</u> U.S. Dep't of Health & Human Serv., Screening for Domestic Violence in Heath Care Settings (August 2013), Office of the Assistant Secretary for Planning and Evaluation ("Screening and counseling for domestic violence was first institutionalized in 1992 when the Joint Commission on the Accreditation of Hospitals and Health Care Organizations (JCAHO) mandated that emergency departments develop written protocols for identifying and treating survivors of domestic violence in order to receive hospital accreditation (Joint Commission, 2009).  Since then, many health associations have supported screening across health care specialties.  The American Medical Association (AMA), American Congress of Obstetrician Gynecologists (ACOG), and the American Nurses Association (ANA) all recommend routine universal screening.").[2]

The trial court therefore erred in excluding the hospital records documenting the victim's initial treatment at Ochsner Hospital on February 23, 2013, during which she identified her assailant and placed the incident in the context of domestic violence, and the follow-up visit with Dr. Anderson on February 25,

_____

[2] See http://aspe.hhs.gov/hsp/13/dv/pb-screeningDomestic.cfm.

7

2013, during which the victim elaborated on her prior statements and received counseling on ways to change her behavior even as she insisted that she would not report the incident to the police. These statements are non-hearsay as a matter of La.C.Cr.P. art. 803(4) and are therefore admissible as substantive evidence because they were made for purposes of diagnosis and treatment, essential components under current medical practice in cases of domestic violence, and not as part of a forensic examination intended for use at trial. Cf. State v. Watley, 301 So.2d 332 (La. 1974)(trial court erred in overruling hearsay objection to testimony of psychiatrist regarding his examination of victim immediately before trial for purposes of assessing her mental condition as it related to her capacity to resist sexual assault and including details of the offense provided by the victim).

The statements at issue in the present case are also non-testimonial for purposes of the Sixth Amendment Confrontation Clause because they were not "procured for the primary purpose of creating an out-of-court substitute for trial testimony." Michigan v. Bryant, 562 U.S. ____, ____, 131 S.Ct. 1143, 1155, 179 L.Ed. 93 (2011) (emphasis added); see id., ("In making the primary purpose determination, standard rules of hearsay, designed to identify some statements as reliable, will be relevant."); see also White v. Illinois, 502 U.S. 346, 356, 112 S.Ct. 736, 743, 116 L.Ed.2d 848 (1992)("[A] statement made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility that a trier of fact may not think replicated by courtroom testimony."); cf. Melendez-Diaz v. Massachusetts, 557 U.S. ____, ___, n.2, 129 S.Ct. 2527, 2533, 174 L.Ed.2d 319 (2001) ("[M]edical reports created for treatment purposes . . . would not be testimonial under our decision today.") (citations omitted); Giles v. California, 554 U.S. ____, ___, 128 S.Ct. 2678, 2692-93, 171 L.Ed. 488 (2008) ("[S]ince only testimonial statements are excluded by the Confrontation Clause[,][s]tatements to

8

friends and neighbors about abuse and intimidation [by women in abusive relationships], and statements to physicians in the course of receiving treatment would be excluded, if at all, only by hearsay rules[.]"); Bryant, 562 U.S. at ____, 131 S.Ct. at 1174 (Scalia, J., dissenting) ("Today's opinion [a revisionist narrative in which reliability continues to guide our Confrontation Clause jurisprudence] adopts . . . the discredited logic of White [] . . . [when it] announces that in future cases it will look to 'standard rules of hearsay, designed to identify some statements as reliable,' when deciding whether a statement is testimonial."). Although the state has evidently not produced any proof of the victim's demise, unavailability of the declarant is not a prerequisite for introducing the statements as a matter of either the hearsay exception in La. C.E. art. 803(4), or the Confrontation Clause of the Sixth Amendment. White, 502 U.S. at 356-57, 112 S.Ct. at 743.

On the other hand, we find no error in the exclusion of the record for February 27, 2013, as that follow-up visit appears to have been conducted for the primary purpose of persuading the victim to report the incident to the police as the first step towards arresting and prosecuting her assailant, and contains the embedded statement of the victim's mother (testimonial in context) that abuse of her daughter by defendant had happened on other occasions as well. See La. C.E. art. 803(4), Cm't (d) ("The declarant need not be the patient for this Paragraph to apply. However, there must be sufficient indications from the circumstances that the declarant possessed firsthand knowledge of that of which he spoke."). In fact, the medical personnel at Ochsner were under a legal obligation to report the incident to the police, a duty they evidently discharged during that follow-up visit. See R.S. 15:1504(A) ("Any person, including but not limited to a health, mental health, and social service practitioner, having cause to believe that an adult's physical or mental health or welfare has been or may be further adversely affected

9

by abuse, neglect, or exploitation shall report in accordance with R.S. 15:1505 [(A) "to any adult protection agency or to any local or state law enforcement agency."]).

We also find no error in the trial court's exclusion of the letters written by the victim on August 14, 2013 and February 5, 2014, or months after the charged offenses allegedly occurred on February 19, 2013. The letters looked backward in time and formed part of a narrative of past events leading to the pending prosecution of defendant. See 2 K. Broun, McCormick on Evidence, 398 (7th ed. 2013) ("In more formal hearsay terms, forward-looking statements of intention are admitted while backward-looking statements of memory or belief are excluded because the former do not present the classic hearsay dangers of memory and narration. The weakness inherent in forward-looking statements - - the uncertainty that the intention will be carried out - - may lead to exclusion, but this is under the relevancy doctrine rather than hearsay analysis.") (footnote omitted). We agree with Judge Lobrano, however, that the trial court erred in excluding a letter written by the victim on January 19, 2012 in its entirety. Portions of that letter, in which the victim revealed her apparent resolve to end her relationship with defendant and to move on, are admissible as a matter of La. C.E. art. 803(3), if properly authenticated, to show her then existing state of mind, but only if any references to prior acts of abuse ostensibly committed by defendant are fully redacted. See State v. Magee, 11-0574, pp. 44-45 (La. 9/28/12), 103 So.3d 285, 317-18, cert. denied, ___ U.S. ____, 134 S.Ct. 56, 187 L.Ed.2d 49 (2013) (portions of letter written by victim before her murder expressing her "existing state of mind regarding her relationship with the defendant and her determination to establish a life on her own" were admissible; other portions of the letter "look[ing] backward in time, reflecting on the last nine years of her life and the events that preceded and precipitated her breakup with the defendant . . . [including] the abuse, both physical and mental, she ostensibly suffered at the defendant's hands" were

10

inadmissible); <u>see</u> <u>also</u> <u>State v. Welch</u>, 615 So.2d 300, 303 (La. 1993) ("[T]he state could not place the circumstances of the offense in their proper context without reference to the nature of the relationship existing between the victim and the defendant. . . . The primary purpose of the evidence was not to prove Welch's bad character but to illustrate the volatile nature of his relationship with the victim and his inability to put her behind him and 'get on with his life.'").

Accordingly, the decision of the district court is reversed in part and affirmed in part and this case is remanded to the court for further proceedings.

REVERSED IN PART; AFFIRMED IN PART; CASE REMANDED.

SUPREME COURT OF LOUISIANA

No. 2014-KD-1526

STATE OF LOUISIANA
v.
DAVID KOEDERITZ

**CRICHTON, J., additionally concurring**:

I concur in all respects with the majority opinion that the victim's statements to medical personnel reflected in the certified Ochsner Hospital records of February 23 and 25, 2013, are admissible under La. C.E. art. 803(4). Moreover, I agree that the statements are non-testimonial for purposes of the Confrontation Clause because they were not procured for trial purposes, much like an alleged victim's statements to a forensic psychiatrist. Finally, as the majority correctly notes, the victim's letter of January 19, 2012 (over one year prior to the alleged crime) reflects her then-existing state of mind and her intentions, and is therefore admissible under La. C.E. art. 803(3). This evidence is crucial in a domestic abuse battery case, particularly where, as here, the victim is "unavailable" under law.

I write separately to caution attorneys as to the discretion, care and restraint that must be exercised when presenting this type of evidence – especially in a jury trial. In some cases, portions of the medical records will need to be carefully redacted; cases involving letters or diary entries by the "unavailable" victim require scrutiny and measured restraint to ensure compliance with the Confrontation Clause and the Louisiana Code of Evidence. Finally, the trial judge, as the gatekeeper, should recognize his or her obligation under La. C.E. art. 403 to balance the probative value of the tendered evidence versus the potential prejudice

1

such that the defendant receives due process. Thus, with this cautionary instruction, I embrace the rationale of Judge Lobrano's dissent and wholeheartedly agree with the majority's conclusion in this case.