# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 20-274


**STATE OF LOUISIANA**

**VERSUS**

**LANCE S. BARTON**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. CR 84349
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**SHARON DARVILLE WILSON**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of John E. Conery, Van H. Kyzar, and Sharon Darville Wilson, Judges.


**AFFIRMED.**

**Hon. Donald D. Landry**
**Lafayette Parish District Attorney**
**P. O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Douglas Lee Harville**
**Louisiana Appellate Project**
**P.O. Box 52988**
**Shreveport, LA 71135**
**(318) 222-1700**
**COUNSEL FOR DEFENDANT APPELLANT:**
    **Lance S. Barton**

**Lance S. Barton – Pro Se**
**Louisiana State Prison**
**17544 Tunica Trace - Oak-3**
**Angola, LA 70712**
**COUNSEL FOR DEFENDANT APPELLANT:**
    **Lance S. Barton**

**WILSON, Judge.**

The Defendant, Lance Barton, was charged by grand jury indictment with five counts of molestation of a juvenile under the age of five, violations of La. R.S. 14:81.2. The State dismissed counts two through five. Following a trial by jury, Defendant was found guilty of one count of molestation of a juvenile. The trial court sentenced Defendant to ninety-nine years at hard labor, with fifty years to be served without benefit of parole, probation, or supervision of sentence. The trial court ordered Defendant to receive chemical castration treatment for the entirety of his life, pursuant to La. R.S. 14:43.6(B). Defendant appeals. For the following reasons, we affirm.

## I.

### ISSUES

We must decide:

(1)     Whether evidence that was properly admissible was insufficient to establish beyond a reasonable doubt that Lance Barton molested J.P;

(2)     Whether the trial court erred when it allowed the State to admit, over the objection of Lance Barton, hearsay testimony (A) from Bridget Dartez with the Department of Children and Family Services and (B) an interview with J.P. on June 9, 2015, which was introduced through the testimony of Jennifer Smith, a forensic interviewer at Hearts of Hope; and

(3)     Whether the trial court erred when it allowed the State to admit, over the objection of Mr. Barton, Louisiana Code of Evidence Article 412.2 evidence; and

(4)     Whether the trial court erred by imposing an improper and/or an unconstitutionally harsh and excessive sentence; and

(5)     Whether the trial court erred by allowing the prosecution to introduce Defendant's prior sexual convictions under the pretext of Louisiana Code of Evidence Article 412.2.[1]

II.

## PROCEDURAL HISTORY

On August 26, 2015, the Acadia Parish Grand Jury returned an indictment charging that, from on or about July 1, 2014, until June 2, 2015, Mr. Barton willfully, unlawfully, and intentionally committed lewd or lascivious acts upon a juvenile, age 5, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile, in violation of La. R.S. 14:81.2. On September 10, 2015, Mr. Barton waived formal arraignment and pled not guilty.

On October 12, 2017, Defendant notified the trial court that he would represent himself.

On May 24, 2018, the State provided notice of other crimes evidence pursuant to La. Code of Evid. Art. 412.2.[2] Defendant filed a *pro se* motion in limine in response and counseled motions to exclude article 412.2 evidence.  The

---

[1] Assignment of Error introduced in Defendant's Pro Se Supplemental Brief.

[2] In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.

Louisiana Code of Evidence Article 412.2 (B).

2

article 412.2 motions were withdrawn on August 16, 2018, and on October 11, 2018, the trial court denied a renewed motion to exclude article 412.2 evidence. Throughout the pre-trial timeline, the State filed several article 412.2 notices, and in response, Defendant filed motions to exclude or raised an objection.

On October 10, 2018, Defendant moved to exclude a June 29, 2015, child forensic examination of the victim. The trial court denied this motion on October 11, 2018.

On September 24, 2019, the jury trial began. At the start of trial, prior to calling the first witness, the State introduced evidence of Defendant's prior convictions. Defendant objected.

On September 25, 2019, the State called the victim, J.P., as their first witness. In her testimony, the victim testified that Defendant did not touch her. After hearing all the evidence, arguments of counsel, and the trial court's jury instructions, the jury found Defendant guilty as charged.

On October 11, 2019, Defendant filed a motion for post-verdict judgment of acquittal and a pro se motion for new trial. After a hearing on October 14, 2019, the trial court denied the motion and a sentence was imposed.

On October 28, 2019, Defendant filed a motion for appeal, and the order of appeal was filed the next day.

III.

**FACTS**

Defendant was convicted of molesting the five-year-old granddaughter of his girlfriend. In her first recorded interview at Hearts of Hope, the victim denied any claim that Defendant touched her inappropriately. In a subsequent statement to a caseworker and in a second recorded interview at Hearts

3

of Hope, however, the victim accused Defendant of touching her private part and butt with his hand. At trial, the victim testified that Defendant did not touch her inappropriately and stated that she did not remember the prior statements in which she accused Defendant.

IV.

## LAW AND DISCUSSION

### ERRORS PATENT

In accordance with La. Code Crim. P. art 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

### ASSSIGNMENT OF ERROR NO. 1

Defendant calls into question the sufficiency of the admissible evidence used to prove he committed molestation of the victim in this case.

*Evidence at Trial*

The victim was the first witness called by the State, and she began by testifying that she knew the difference between the truth and lie. The victim testified that she was six years old in 2015. When asked if she remembered ever having a conversation with Defendant, the victim responded "No" but later testified that she had spoken with him on the phone. The victim testified that she knew the Defendant because he was "with her grandma" and referred to him as "Pa-Pa."

The victim testified that she remembered going to Hearts of Hope but did not remember the conversation she had with the case workers. She

4

remembered coloring but did not remember discussing private parts or the difference between good and bad touches. She did not remember anyone asking if she had been touched in a bad place, but she did remember telling the interviewer that no one had ever touched her. On re-direct, when asked if she remembered her first Hearts of Hope interview where she said that nothing happed, the victim responded, "Yes." However, when asked if she remembered the second time when she said something did happen, the victim replied, "No."

Next, the State called Jennifer Smith, a forensic interviewer with Hearts of Hope. Ms. Smith testified that she interviewed the victim on June 9, 2015. The video of the June 9, 2015 interview was played for the jury. During this interview, the victim is seen telling Ms. Smith that no one touched her private parts, and at the end of this interview, the victim states to Ms. Smith that she is going to talk to the cops and that her mother told her not to tell the cops that someone touched her private part.

The next witness called was Allison Roy, also a forensic interviewer with Hearts of Hope. Ms. Roy testified that she interviewed the victim on June 29, 2015, the second interview. The video of this interview was played for the jury. During this interview, the victim stated that the Defendant touched her in her private part when she was sleeping in the bed with the Defendant and her "maw maw." The victim also told Ms. Roy that Defendant touched her on another occasion, at a motel in Lake Charles, LA. The victim stated that she believed the Defendant was "doing it on purpose" and that her mom said she was going to "kill him."

The next witness, Bridget Dartez, testified that she was a child protection investigator with the Department of Children and Family Services in

5

Acadia Parish. According to Ms. Dartez, during an interview at Hearts of Hope, the victim indicated that her mother told her "not to disclose, not to say anything should she have been touched inappropriately." Ms. Dartez asked the victim's mother permission to interview the victim a second time. Ms. Dartez went to the victim's house and interviewed the victim a second time. Ms. Dartez testified that the victim also told her that the Defendant touched her while sleeping in the bed between the Defendant and her "maw maw." Ms. Dartez testified that, following the interview, she scheduled the second interview with Hearts of Hope. Ms. Dartez testified that she briefly interviewed the victim on June 8, 2015, after the victim had returned to her mother from visiting her father and five days after Ms. Dartez had interviewed the victim's mother. This interview took place at the house of the victim's aunt, where the family had been staying after the Department of Child and Family Services (DCFS) made them leave their home following the alleged offense.[3]

When asked whether she asked the victim if she had been improperly touched, Ms. Dartez answered that she did not ask the victim for details since the victim's Hearts of Hope interview was scheduled for the following day[4]. Since the victim was only five years old, Ms. Dartez did not want to lead her into questions so near to the Hearts of Hope interview. As for the first Hearts of Hope interview, Ms. Dartez testified that she watched the interview and remembered the victim repeatedly saying that no one ever touched her. Defense counsel asked Ms. Dartez if the victim told the interviewer that her mom instructed her not to say that she was touched; Ms. Dartez answered: "She said that mom told me that, yes, someone

---

[3] Due to the proximity of the Defendant, a registered sex offender.
[4] This is in reference to the first Hearts of Hope interview on June 9, 2015.

did touch me not to say anything. Something along those lines." According to Ms. Dartez, the interviewer asked the victim if she was telling the truth, and the victim answered, "Yes." Ms. Dartez further testified that after the interviewer questioned the victim about her mom, the interviewer again asked the victim if anyone ever touched her. According to Ms. Dartez, the victim replied, "No."

During a conversation with Detective Kim Matthews on June 15, 2015, Ms. Dartez learned that the victim would be interviewed a second time by Hearts of Hope, which led Ms. Dartez to question the victim once again. According to Ms. Dartez, the interview was not recorded, and the victim was alone. Although Ms. Dartez took notes and used them to make a report, Ms. Dartez shredded her notes.

The Defense called Ms. Krystal Richard, the victim's mother. She testified that the victim and Ms. Richard's other children called Defendant "Pa Pa." Ms. Richard testified that the victim did tell her that she had been touched but later told her that Defendant did not touch her. On cross-examination, Ms. Richard testified that since the incident in 2015, Defendant has helped her pay bills a couple of times. Since 2015, Ms. Richard explained, she has talked to Defendant on her mom's phone. When asked if her daughters spoke to Defendant, Ms. Richard answered, "At the beginning, yes, the girls were on the phone with him." When asked if her children were ever left alone with Defendant, Ms. Richard replied that her children were alone with her mom while Ms. Richard was at work.

Ms. Richard then stated, however, that Defendant did babysit her children once. Ms. Richard testified that when the victim told her she had been touched, Ms. Richard took her out of the home. Later, however, the victim "c[a]me out and told [her] that she was never touched." According to Ms. Richard,

7

she asked the victim multiple times whether anyone had touched her. When asked if she ever told the victim not to tell "them people," Ms. Richard responded that she did tell the victim that but the term "them people" was in reference to her other children. Ms. Richard stated that it was her intention that the victim not tell her brother and sister about what had happened. Ms. Richard testified that she brought her kids to the doctor, and the doctor testified that "they was [sic] never touched." Ms. Richard explained that she believed her daughter when she stated that she had been touched and that she also believed her daughter when she said she had not been touched. During the day of the interview, DCFS visited with the victim; Ms. Richard testified that she was not present when DCFS spoke with the victim, but her sister was. The morning of the Hearts of Hope interview, Ms. Richard testified, she told the police what the victim told her.

*Credibility of the Witness*

When considering a claim of insufficient evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). It is not the function of an appellate court to assess credibility or reweigh the evidence. State v. Stowe, 93–2020 (La. 4/11/94), 635 So.2d 168. State v. Smith, 94-3116, p. 2 (La. 10/16/95), 661 So.2d 442.

Defendant argues that the only witness with direct knowledge of whether he molested the victim was the victim herself. At the time of trial the victim testified that Defendant did not molest her. Therefore, the testimony did not offer the State any evidence that Defendant committed molestation of a juvenile. Defendant contends there was no evidence to corroborate the victim's out-of-court

8

accusations against Defendant. Finally, Defendant argues the victim's out-of-court accusations, her interview with Ms. Dartez, and her second Hearts of Hope interview, should not have been considered as substantive evidence of Defendant's guilt. The State, however, argues that there was sufficient evidence to convict Defendant despite the inconsistencies in the victim's testimony.

When addressing the use of prior inconsistent statements as substantive evidence of a defendant's guilt, the second circuit stated the following:

> Extrinsic evidence, such as prior inconsistent statements, may be admitted when offered solely to attack the witness's credibility. LSA–C.E. art. 607(D)(2); *State v. Givens*, 45,246 (La.App.2d Cir.6/9/10), 41 So.3d 589. Although prior inconsistent statements may be used to impeach witnesses on the issue of credibility, they generally could not be used as substantive evidence of the Defendant's guilt until the 2004 amendment of LSA–C.E. art. 801(D)(1)(a). *State v. Jones*, 48,624 (La.App.2d Cir.1/22/14), 132 So.3d 505; *State v. Cobb*, 2013-1593 (La.App. 1st Cir.3/27/14), 144 So.3d 17. Article 801(D) now provides in pertinent part:
>
> A statement is not hearsay if:
>
> 1. Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is:
>
> (a) In a criminal case, inconsistent with his testimony, provided that the proponent has first fairly directed the witness's attention to the statement and the witness has been given the opportunity to admit the fact and where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement[.]
>
> Thus, under Article 801(D)(1)(a), a prior inconsistent statement is not hearsay and can be considered for the truth of the matter asserted, if the statement is corroborated. *State v. Cobb, supra*. This Court has noted that before such prior statements can be accepted as nonhearsay, and therefore probative, additional evidence must also corroborate the facts sought to be proved by these prior inconsistent statements. *State v. Rankin*, 42,412 (La.App.2d Cir.9/19/07), 965 So.2d 946.

*State v Wilson,* 50, 418, pp. 22-23 (La. App. 2 Cir. 4/6/2016), 189 So. 3d 513, 527-528, *writ denied,* 16-793 (La. 4/13/17), 218 So. 3d 629.

This Court asserts that corroborating evidence was not needed for the jury to consider the victim's second Hearts of Hope interview as substantive evidence. A statement made by a minor victim to certain qualified persons may be recorded and introduced into evidence pursuant to La.R.S. 15:440.1 through 15:440.5. Louisiana Revised Statutes 15:440.3 provides that a "videotape authorized by this Subpart is hereby admissible in evidence as an exception to the hearsay rule." The present victim's Hearts of Hope interview was admitted pursuant to these provisions. As discussed in the next assignment of error, there are several requirements for the admission of a prior statement pursuant to La.R.S. 15:440.5. Still, there is no requirement that the statement be corroborated to be considered as substantive evidence. Evidence that is admitted pursuant to an exception to the hearsay rule is admissible as substantive evidence. *See State v Koederitz,* 14-1526 (La. 3/17/15), 166 So. 3d 981. *State v. Cotton,* 16-81 (La.App. 1 Cir. 9/16/16) (unpublished opinion)[5], *writ denied*, 16-1863 (La. 6/16/17), 220 So.3d 756. Thus, the victim's Hearts of Hope interviews, specifically the second, could have been considered by the jury for its substantive value despite the lack of corroboration. In *State v. Jackson*, 526 So.2d 1261 (La.App. 3 Cir. 1988), this Court recognized that a prior inconsistent statement may be considered as substantive evidence since it is admissible under an exception to the hearsay rule.

Considering the victim's second Hearts of Hope interview as substantive evidence, this Court finds that the evidence was sufficient to convict Defendant. As the supreme court has explained:

---

[5]This case is cited at 2016 WL 5018530.

> A victim's or witness's testimony alone is usually sufficient to support the verdict, as appellate courts will not second-guess the credibility determinations of the fact finder beyond the constitutional standard of sufficiency. *State v. Davis*, 02-1043, p. 3 (La. 6/27/03), 848 So.2d 557, 559. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the fact finder, is sufficient support for a requisite factual conclusion. *State v. Robinson*, 02-1869, p. 16 (La. 4/14/04), 874 So.2d 66, 79.

*State v. Dorsey*, 10-216, pp. 43-44 (La. 9/7/11), 74 So.3d 603, 634, *cert. denied*, 566 U.S. 930, 132 S.Ct. 1859 (2012). Although the victim's second Hearts of Hope interview was inconsistent with the victim's trial testimony, it was consistent with the victim's other prior statement to Ms. Dartez as to one of the episodes of inappropriate touching. This Court finds the jury's decision to believe the victim's prior statements over her in-court testimony was rational, especially considering the evidence of influence by the victim's mother, the victim's contact with Defendant since the allegations, and the financial assistance given to the victim's mother by Defendant.

## ASSIGNMENT OF ERROR NO. 2

Defendant asserts the trial court erred in allowing the State to admit, over trial counsel's objection, the testimony of Bridget Dartez and the victim's second Hearts of Hope interview. Defendant argues that both contain hearsay statements by the victim that Defendant molested her; thus, the testimonies were inadmissible as substantive evidence unless they were admissible as non-hearsay pursuant to La.Code Evid. art. 801(D)(1)(a).

During Ms. Dartez's trial testimony as to what the victim told her, the Defense raised an objection. The Defendant objected as a matter of hearsay since the victim's statement was made out of Court and was being offered as proof of the allegations against Defendant. According to La.Code Evid. art. 801(C), "Hearsay"

11

is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. Since the victim's statement was made out of Court and was being offered as proof of the allegations against Defendant, Defendant's objection appears to have merit. Although the trial court did not require the State to offer any authority for the admission of the victim's statements to Ms. Dartez, the State argues on appeal that the testimony was properly admitted as "non-hearsay." "Non-hearsay" is defined as follows:

> **D. Statements which are not hearsay**. A statement is not hearsay if:
>
> **(1) Prior statement by witness.** The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
>
> (a) In a criminal case, inconsistent with his testimony, provided that the proponent has first fairly directed the witness' attention to the statement and the witness has been given the opportunity to admit the fact and where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement;
>
> (b) Consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive;
>
> (c) One of identification of a person made after perceiving the person; or
>
> (d) Consistent with the declarant's testimony and is one of initial complaint of sexually assaultive behavior.
>
> (e) A statement made by the victim of a sexually-oriented criminal offense to a healthcare provider during the course of a forensic medical examination as defined in R.S. 15:622 and the healthcare provider has documented that statement in writing during the course of the forensic medical examination.

La.Code Evid. art. 801 (in pertinent part).

Defendant argues that Ms. Dartez' testimony did not meet the requirements of La.Code Evid. art. 801(D)(1)(a); thus, the testimony was hearsay

and should not have been admitted for substantive purposes. Defendant contends the victim was not directed to the alleged inconsistencies between her trial testimony and the statement she gave to Ms. Dartez. According to Ms. Dartez's testimony at trial, during the interview at the victim's home, and Ms. Dartez also identified herself as a child protection investigator with the Department of Children and Family Services in Acadia Parish. At trial, the victim was asked if she remembered going to Hearts of Hope, if she remembered what she talked about at Hearts of Hope, and if she remembered having a conversation with a "lady detective" with the Sheriff's Office. The issue is that the victim was not asked if she remembered having a conversation with anyone that could be interpreted as being Ms. Dartez.

In its brief, the State does not address Defendant's claim that the victim was not fairly directed to the alleged inconsistencies between her trial testimony and the statement she gave to Ms. Dartez. Rather, the State asserts that Ms. Dartez' testimony was "non-hearsay" because it was corroborated by the victim's second Hearts of Hope interview. Regardless of whether the statement was corroborated, it is apparent to this Court that the State still failed to fairly direct the victim to her previous statement to Ms. Dartez. Thus, the admission of Ms. Dartez' testimony was erroneous. Use of inadmissible hearsay, however, is subject to the harmless error analysis. *State v. Chapman*, 96-152, p. 11 (La.App. 3 Cir. 10/9/96), 683 So.2d 1236 *writ denied*, 97-583 (La. 9/5/97), 700 So.2d 505. The standard for harmless error is whether the verdict was surely unattributable to the error. *Id.* As stated in the previous assignment of error discussion, the testimony of Ms. Dartez regarding the victim's out-of-court statement and the

13

victim's second Hearts of Hope interview was significant in implicating the Defendant.

*Hearts of Hope Interview*

Defendant also challenges the trial court's admission of the victim's second Hearts of Hope interview which was admitted during the testimony of Allison Roy. Prior to trial, Defendant filed a "Motion to Exclude Child Forensic Interview." In the motion, Defendant argued the interview should be excluded for failure to meet the requirements of La.R.S. 15:440.4 and 15:440.5. Louisiana Revised Statutes 15:440.4 provides, in pertinent part:

A. A videotape of a protected person may be offered in evidence either for or against a defendant. To render such a videotape competent evidence, it must be satisfactorily proved:

(1) That such electronic recording was voluntarily made by the protected person.

(2) That no relative of the protected person was present in the room where the recording was made.

(3) That such recording was not made of answers to interrogatories calculated to lead the protected person to make any particular statement.

(4) That the recording is accurate, has not been altered, and reflects what the protected person said.

(5) That the taking of the protected person's statement was supervised by a physician, a social worker, a law enforcement officer, a licensed psychologist, a medical psychologist, a licensed professional counselor, or an authorized representative of the Department of Children and Family Services.

Louisiana Revised Statutes 15:440.5 provides, in pertinent part:

A. The videotape of an oral statement of the protected person made before the proceeding begins may be admissible into evidence if:

(1) No attorney for either party was present when the statement was made;

14

(2) The recording is both visual and oral and is recorded on film or videotape or by other electronic means;

(3) The recording is accurate, has not been altered, and reflects what the witness or victim said;

(4) The statement was not made in response to questioning calculated to lead the protected person to make a particular statement;

(5) Every voice on the recording is identified;

(6) The person conducting or supervising the interview of the protected person in the recording is present at the proceeding and available to testify or be cross-examined by either party;

(7) The defendant or the attorney for the Defendant is afforded an opportunity to view the recording before it is offered into evidence; and

(8) The protected person is available to testify.

B. The admission into evidence of the videotape of a protected person as authorized herein shall not preclude the prosecution from calling the protected person as a witness or from taking the protected person's testimony outside of the courtroom as authorized in R.S. 15:283. Nothing in this Section shall be construed to prohibit the defendant's right of confrontation.

Defendant asserted that the video did not comply with La.R.S. 15:440.4 because it was not "voluntarily made." Defendant noted that nothing in the video indicated that the victim was informed of the recording of the interview. This Court disagrees with that assertion. The second Hearts of Hope interview video shows the interviewer did advise the victim that the interview was being recorded and asked the victim if that was okay. The victim responded in the affirmative.

In their appellant brief, Defendant asserts that the second Hearts of Hope interview was erroneously admitted because the statements made in the interview were not corroborated as required by La.Code Evid. art. 801(D)(1)(a).

15

Accordingly, Defendant argues, the interview should not have been admitted as substantive evidence. The Defendant made objections as to the second Hearts of Hope interview, however, according to the record, this was not one of them.

The requirement of a contemporaneous objection to preserve an error for appeal is set forth in La.Code Crim.P. art. 841:

> An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

This Court has stated the following regarding the preservation of an error for appeal when a different ground is being argued on appeal:

> In *State v. McGinnis*, 07-1419 (La.App. 3 Cir. 4/30/08), 981 So.2d 881, this Court held that where a defendant objected to the introduction of evidence on a ground other than the ground asserted on appeal, he was precluded from raising said objection on appeal. Specifically, this Court stated:
>
> > In his fifth assignment of error, the Defendant contends the trial court erred by allowing Detective Green to testify to hearsay evidence concerning a revolver which was recovered at the crime scene. The Defendant cites to record page 111. On that page of the record, the State asked Detective Green if State Exhibit 18 was the revolver recovered from the Defendant's car. Defense counsel objected, stating, "Mr. Green had stated earlier that he was not present at the crime scene; so, he can't testify to whether that's the revolver that was recovered or not." The Defendant did not object based on hearsay. This issue was not asserted in the trial court and is not [sic] be addressed by this Court on appeal. La.Code Crim.P. art. 841; Uniform Rules - Courts of Appeal, Rule 1-3.

> *Id*. at 895.

> Because Defendant only objected to the hearsay portion of the video interview and failed to object to the State's introduction of the video interview through Lieutenant Johnson, he may not now raise a

claim that it was error for the trial court to allow introduction of the video interview.

*State v. Samuel*, 19-408, pp. 17-18 (La.App. 3 Cir. 2/5/20), 291 So.3d 256, 267-68, *writ denied*, 20-398 (La. 7/24/20), 299 So.3d 77.

Because Defendant failed to argue at trial that the second Hearts of Hope interview was inadmissible for the State's failure to satisfy the requirements of La.Code Crim.P. art. 801(D)(1)(a), Defendant is precluded from raising that argument on appeal. Furthermore, as stated in the previous assignment of error analysis, the Hearts of Hope interview was admissible pursuant to La.R.S. 15:440.1 *et seq.* regardless of its corroboration by other evidence. Accordingly, the argument raised in this assignment of error with respect to the admissibility of the second Hearts of Hope interview was not preserved for appeal, and, additionally, lacks merit.

*Harmless Error*

As stated previously, the trial court erroneously admitted Ms. Dartez' testimony regarding the victim's prior inconsistent statement to her. The standard for harmless error is whether the verdict was surely unattributable to the error. *Chapman,* 683 So.2d 1236. As stated above, Defendant failed to preserve his challenge to the admissibility of the second Hearts of Hope interview based on the lack of corroborating evidence. Furthermore, as stated in the review of the record for sufficient evidence, this Court finds that the second Hearts of Hope interview was admissible pursuant to La.R.S. 15:440.1 *et seq.* regardless of the lack of corroborating evidence. Since Ms. Dartez' testimony regarding the victim's prior inconsistent statement was merely cumulative of the victim's second Hearts of Hope interview, we conclude that the verdict was surely unattributable to Ms.

17

Dartez' testimony. Thus, this Court finds that the admission of this testimony was harmless error. This assignment of error lacks merit.

**ASSIGNMENT OF ERROR NO. 3**

Defendant argues the trial court erred in allowing the admission of the evidence of Defendant's prior convictions without offering a witness or explanation to the jury of how these crimes were similar to the instant charge. Considering the victim's recantation at trial and the lack of evidence to contradict the recantation, Defendant contends the jury's verdict was influenced by the evidence of Defendant's prior convictions. Thus, Defendant argues the prejudicial effect of the other crimes evidence outweighed its probative value. The State argues that the evidence of prior sexual offenses was necessary to demonstrate the Defendant's propensity to sexually assault children in his custodial role and there was little chance the jury confused the facts of the present crime with the other crimes evidence.

In previous cases, this Court has discussed the history and purpose behind Article 412.2. In *State v. Brown*, 03-1747, p. 9 (La.App. 3 Cir. 5/12/04), 874 So.2d 318, 324, *writ denied*, 04-1413 (La. 11/8/04), 885 So.2d 1118, the trial court allowed the State to introduce documents of Brown's prior conviction as well as a statement of facts by the prosecutor. Brown argued that the introduction of documents and the allowance of the State to read a statement of facts permitted the introduction of hearsay and denied him the opportunity to confront and cross-examine the circumstances surrounding the prior conviction. This Court responded:

"The purpose of the newly enacted Article 412.2 was discussed by the Louisiana Supreme Court at length in *State v. Williams*, 02–

1030 (La.10/15/02), 830 So.2d 984. The issue in *Williams*, however, was whether for the purpose of Article 412.2, a hearing was required by *State v. Prieur*, 277 So.2d 126 (La.1973). Historically, evidence of prior bad acts (propensity evidence) were inadmissible to show that the accused more than likely acted in conformity therewith… There can be no question that the evidence of Brown's prior conviction was prejudicial. The test is whether its probative value outweighs its prejudicial effect. The victim in the present case was an eleven-year-old girl. She was the type of victim the legislature sought to protect when it lowered the standard set by La.Code. Evid. art. 404(B) by enacting the separate and distinct Article 412.2. However, even the lower standard set by La.Code. Evid. art. 412.2 subjects the evidence sought to be admitted to the balancing test provided in Article 403. *Id.* at 326-27.

Documentary evidence, in the form of a certified copy, was used to prove the Defendant's prior conviction for carnal knowledge of a juvenile in *State v. Williams*, 11-876 (La.App. 5 Cir. 3/27/12), 91 So.3d 437, *writ denied*, 12-1013 (La. 9/21/12), 98 So.3d 334. Considering the cases cited above as well as the facts in the present case, the trial court did not abuse its discretion in allowing the admission of other sexual convictions in the present case. As stated by this Court in *Brown*, the victim in the present case, a five-year-old girl, is the type of victim the legislature sought to protect when it lowered the standard for the admission of other sexual offenses. Although Defendant complained that the evidence of his prior sexual offenses lacked the information needed by the trial court to weigh the

19

prejudicial versus probative effect properly, Defendant conversely complained that testimony relating to the prior offenses would have overwhelmed the evidence pertaining to the current offense and would have significantly lengthened the trial. Furthermore, the trial court in the present case gave a limiting instruction, clearly explaining to the jury that it must convict Defendant based upon the evidence presented at trial and not based on his previous sexual offenses. Thus, the trial court did not abuse its discretion in admitting evidence of Defendant's previous sexual offenses. Accordingly, this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. 4:

Defendant contends the trial court imposed an improper and/or unconstitutionally harsh and excessive sentence. The trial court imposed the maximum sentence for molestation of a juvenile under the age of thirteen; ninety-nine years at hard labor. La.R.S. 14:81.2(D)(1). Although the trial court could have imposed the entire sentence without benefit of probation, parole, or suspension of sentence, the trial court imposed fifty years of the sentence to be served without benefit of probation, parole, or suspension of sentence. La.R.S. 14:81.2(D)(1). In accordance with La.R.S. 14:43.6, the trial court also ordered Defendant to receive chemical castration for life. Defendant objected to the sentence imposed and filed a Motion to Reconsider Sentence alleging that both the chemical castration and length of the sentence were excessive.

The pertinent penalty provision for molestation of a juvenile is as follows:

> D. (1) Whoever commits the crime of molestation of a juvenile when the victim is under the age of thirteen years shall be imprisoned at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of probation, parole, or suspension of sentence.

La.R.S. 14:81.2.

20

The administration of chemical castration is provided for in La.R.S. 14:43.6:

A. Notwithstanding any other provision of law to the contrary, upon a first conviction of R.S. 14:42 (aggravated or first degree rape), R.S. 14:42.1 (forcible or second degree rape), R.S. 14:43.1(C)(2) (sexual battery when the victim is under the age of thirteen), R.S. 14:43.2 (second degree sexual battery), R.S. 14:81.2(D)(1) (molestation of a juvenile when the victim is under the age of thirteen), and R.S. 14:89.1 (aggravated crime against nature), the court may sentence the offender to be treated with medroxyprogesterone acetate (MPA), according to a schedule of administration monitored by the Department of Public Safety and Corrections.

B. (1) Notwithstanding any other provision of law to the contrary, upon a second or subsequent conviction of R.S. 14:42 (aggravated or first degree rape), R.S. 14:42.1 (forcible or second degree rape), R.S. 14:43.1(C)(2) (sexual battery when the victim is under the age of thirteen), R.S. 14:43.2 (second degree sexual battery), R.S. 14:81.2(D)(1) (molestation of a juvenile when the victim is under the age of thirteen), and R.S. 14:89.1 (aggravated crime against nature), the court shall sentence the offender to be treated with medroxyprogesterone acetate (MPA) according to a schedule of administration monitored by the Department of Public Safety and Corrections.

(2) If the court sentences a defendant to be treated with medroxyprogesterone acetate (MPA), this treatment may not be imposed in lieu of, or reduce, any other penalty prescribed by law. However, in lieu of treatment with medroxyprogesterone acetate (MPA), the court may order the defendant to undergo physical castration provided the defendant file a written motion with the court stating that he intelligently and knowingly, gives his voluntary consent to physical castration as an alternative to the treatment.

C. (1) An order of the court sentencing a defendant to medroxyprogesterone acetate (MPA) treatment under this Section shall be contingent upon a determination by a court appointed medical expert that the defendant is an appropriate candidate for treatment. Except as provided in Subparagraph (2)(b) of this Subsection, this determination shall be made not later than sixty days from the imposition of sentence. An order of the court sentencing a defendant to medroxyprogesterone acetate (MPA) treatment shall specify the duration of treatment for a specific term of years, or in the discretion of the court, up to the life of the defendant.

(2)(a) In all cases involving defendants sentenced to a period of incarceration or confinement in an institution, the administration of treatment with medroxyprogesterone acetate (MPA) shall commence

not later than one week prior to the Defendant's release from prison or such institution.

(b) When the provisions of this Paragraph apply, if the defendant is sentenced to incarceration or confinement for a period of time that is ten years or more, the commencement of the administration of treatment with medroxyprogesterone acetate (MPA) shall be contingent upon a medical evaluation to determine whether the defendant is an appropriate candidate for treatment. This evaluation shall be conducted not sooner than thirty days prior to the commencement of the administration of the treatment.

(3) The Department of Public Safety and Corrections shall provide the services necessary to administer medroxyprogesterone acetate (MPA) treatment. Nothing in this Section shall be construed to require the continued administration of medroxyprogesterone acetate (MPA) treatment when it is not medically appropriate.

(4) If a defendant whom the court has sentenced to be treated with medroxyprogesterone acetate (MPA) fails to appear as required by the Department of Public Safety and Corrections for purposes of administering the medroxyprogesterone acetate (MPA) or who refuses to allow the administration of medroxyprogesterone acetate (MPA), then the Defendant shall be charged with a violation of the provisions of this Section. Upon conviction, the offender shall be imprisoned, with or without hard labor, for not less than three years nor more than five years without benefit of probation, parole, or suspension of sentence.

(5) If a defendant whom the court has sentenced to be treated with medroxyprogesterone acetate (MPA) or ordered to undergo physical castration takes any drug or other substance to reverse the effects of the treatment, he shall be held in contempt of court.

La.R.S. 14:43.6.

The analysis for an excessive-sentence claim is well-settled:

Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:

La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the

severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99), 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00);765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the Defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983) ), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061

*State v. Soileau,* 13-770, pp. 4-5 (La. App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied,* 14-0452 (La. 9/26/14), 149 So.3d 261.


Defendant contests the trial court's authority to order chemical castration. Second, Defendant contends the imposition of chemical castration and the imposition of the maximum ninety-nine-year sentence amounts to an unconstitutionally excessive sentence. The State responds that the sentence is legal and constitutional.

*Chemical Castration*

Defendant contends the trial court imposed chemical castration as a condition of parole, which, Defendant argues, it was not authorized to do. Defendant cites *State v. R.K.*, 10-982, pp. 1-2 (La.App. 3 Cir. 5/11/11), 64 So.3d 426, 429, a case in which the trial court ordered chemical castration if the

Defendant was eventually released on parole. In its opinion, this Court first noted that La.R.S. 14:43.6 was not in effect at the time R.K. committed his offenses in 2005; thus, it was not applicable to R.K. *Id.* Additionally, this Court noted that R.K. was not eligible for parole and, even if he were, the trial court had no authority to impose a condition on a parolee. *Id.*

Nothing in the present trial court's sentence indicates it ordered chemical castration as a condition of Defendant's parole. It is clear from the wording of the statute that the treatment starts near the time a defendant is scheduled to be released from incarceration – La.R.S. 14:43.6C(2)(a) states that treatment must begin no later than one week prior to the Defendant's release from incarceration. Even though the treatment is targeted for the time period Defendant is released from incarceration, nothing in La.R.S. 14:43.6 indicates that it is a condition of parole. To the contrary, the wording of La.R.S. 14:43.6 indicates that it is part of the *sentence* - Paragraph A states that "the court may *sentence* the offender," and Paragraph B states that the "court shall *sentence* the offender." (emphasis added). Moreover, La.R.S.14:43.6 contains its own penalty provision – La.R.S. 14:43.6(C)(4). The sanctions for violating conditions of parole, on the other hand, are provided for in the statutes addressing parole. *See* La.R.S. 15:574.7. Considering the above, the trial court did not order chemical castration as a condition of parole but as part of Defendant's sentence.

### *Excessiveness of Sentence*

In support of his assertion that the sentence is unconstitutionally excessive, Defendant notes there are few Louisiana cases addressing the imposition of chemical castration. Additionally, Defendant contends, only eight out of the fifty United States have laws permitting chemical castration. The State contends

that because of Defendant's prior convictions, the maximum term of imprisonment of ninety-nine years was not excessive. Furthermore, because of the prior convictions, the State contends that the imposition of chemical castration treatment was required by La.R.S. 14:43.6(B)(1). As noted previously, the State introduced at trial certified copies of Defendant's prior convictions for indecent behavior with a juvenile in 1982; indecent behavior with juveniles in 1990; simple kidnapping, simple burglary of an inhabited dwelling, and aggravated crime against nature in 1984; oral sexual battery and sexual battery in 1995; and molestation of a juvenile and oral sexual battery in 2013. According to the charging instruments, all of Defendant's prior sexual offenses involved victims under the age of thirteen. Thus, it appears that chemical castration was required in this case. In researching, this Court found no Louisiana cases wherein the court discussed the constitutional excessiveness of chemical castration. In all of the cases, chemical castration was found to be inapplicable since it was not in effect at the time the offense was committed. Considering the above as well as the lack of jurisprudence to the contrary, this Court submits Defendant has failed to show that the imposition of chemical castration is constitutionally excessive.

The supreme court has repeatedly admonished "that sentence review under the Louisiana constitution does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is more appropriate in a given case." *State v. Savoy*, 11-1174, p. 5 (La. 7/2/12), 93 So.3d 1279, (citing *State v. Walker*, 00-3200, p. 2 (La. 10/12/01), 799 So.2d 461,; *State v. Cook*, 95-2784, p. 3 (La. 5/31/96), 674 So.2d 957, 959, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996); *State v. Humphrey*, 445 So.2d 1155, (La.1984)). Although the trial court did not name the aggravating and mitigating factors it

considered, the trial court stated that it did consider the aggravating and mitigating circumstances. Furthermore, the trial court watched the victim's demeanor while testifying and noted that she was worried and stressed. The trial court believed the crime committed by Defendant was the most serious, especially considering what he had done to the victim and what he had done to other children. Finally, although there are not many cases in Louisiana wherein chemical castration was imposed, according to La.R.S. 14:43.6(B)(1), it is mandatory when the conviction is for a second or subsequent conviction of molestation of a juvenile under the age of thirteen. The sentence imposed by the trial court was not excessive. This assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. 5

In his supplemental pro se brief, the Defendant asserts another assignment of error. Defendant contends the trial court erred in allowing the State to introduce his prior sexual convictions under the pretext of La.Code Evid. art. 412.2. Defendant cites cases to show the normal methods by which evidence of prior convictions is introduced to the jury – *i.e.*, testimony, jailhouse phone calls, and documents read into the record by the State. Defendant notes there were only documents, not testimony, presented to prove his prior convictions and notes there is no indication in the record that the documents were picked up after they were viewed by the jury. Additionally, Defendant cites to a portion of the record wherein the prosecutor admitted that the purpose of introducing the prior convictions was to "move the meter towards the State." Defendant argues these facts "can only lead one to believe that Article 412.2 was used as a pretext to put appellant's bad character on display." Noting that the victim in this case recanted

26

at trial, Defendant complains that the balancing test required by La.Code Evid. art. 403 was not satisfied and that the introduction of the evidence was not harmless.

This issue has been adequately addressed in Assignment of Error No. 3 filed by counsel. Defendant's accusation that copies of the prior convictions were left in the hands of the jurors is not supported by the record nor was it raised at trial. When the documents were published to the jury, the trial court told the jurors to take their time looking through the documents and then give them to the deputy. There is no indication that this was not done. This assignment of error lacks merit.

V.

## CONCLUSION

For the foregoing reasons, Defendant's conviction and sentence are affirmed.

**AFFIRMED.**